**In re the Marriage of Linda Jean RENDON, Appellant–Petitioner,**

v.

**Ruben G. RENDON, Appellee–Respondent.**

No. 48A02–9708–CV–562.

Court of Appeals of Indiana.

March 12, 1998.

---

Martha J. Mondou, Garrison & Kiefer, P.C., Indianapolis, for Appellant–Petitioner.

## OPINION

BAKER, Judge.

Appellant-petitioner Linda Jean Rendon appeals the denial of her motion to set aside the court's visitation order and an order finding her in contempt of court for failing to comply with court-ordered visitation and allowing appellee-respondent Ruben G. Rendon to hold all future child support payments in trust. First, Linda challenges the trial court's jurisdiction to enter its order under the Uniform Child Custody Jurisdiction Law (UCCJL).

### FACTS

On February 29, 1996, a dissolution decree was entered, terminating the marriage of Linda and Ruben Rendon. At the time the decree was entered, Ruben was living in Texas, while Linda resided in Indiana with the parties' minor child, M.R. Pursuant to

the decree, Linda was awarded custody of M.R., and Ruben was awarded restricted supervised visitation in order to give M.R. an opportunity to reacquaint herself with him. Although the decree did not set forth the details of the supervised visitation, it specifically required the parties to "agree on such a visitation plan or submit written proposals to the court for a specific judicial order." Record at 26. The decree further indicated that any "expanded visitation," which apparently included unsupervised visitation, would be permitted only by an agreement of the parties or after an additional hearing. R. at 26.

Apparently due to the parties' inability to agree on a visitation plan, Ruben filed a motion for the issuance of a visitation order, along with a proposed visitation plan, on April 17, 1996.[1] Pursuant to his proposed plan, Ruben would be allowed supervised visitation with M.R. from May 23–26, 1996, for four hours per day and four continuous days, approximately ninety days later, for six hours per day. The proposed plan also awarded Ruben unsupervised visitation with M.R. for four continuous days at ninety-day intervals thereafter. R. at 30. On May 8, 1996, the court granted Ruben's motion and awarded him visitation as set forth in his proposed plan.

The following day, Linda requested a hearing regarding the visitation order. Specifically, she contended that, pursuant to the dissolution decree, the trial court was required, but failed, to hold a hearing before allowing Ruben unsupervised visitation with M.R. The trial court granted her request and scheduled a hearing for May 22, 1996. However, the hearing was later continued at Linda's request. R. at 39.

On May 13, 1996, Linda was personally served with a copy of the visitation order. Thereafter, on May 15, 1996, she filed a motion to set aside that order, alleging that the trial court erroneously granted Ruben unsupervised visitation with M.R. without first holding a hearing on the matter as required by the dissolution decree. The following day, Linda also filed a motion to clarify the visitation order, contending that the May 8, 1996, visitation order failed to indicate who would supervise the visitation and when and where the visitation was to take place.

Following Ruben's response on May 22, 1996, the court denied Linda's motion to set aside the visitation order, pending a hearing on the matter. The court, however, granted Linda's motion to clarify the visitation order and specifically ordered the supervised visitation to take place from May 23–26, 1996, from 11:00 a.m. until 3:00 p.m. daily, with supervision to be provided by Linda or someone she designated. R. at 17. The court, however, did not name a specific place for the visitation.

Later that same day, Linda faxed to Ruben's attorney a letter indicating that Ruben would be unable to visit M.R. from May 23–26, 1996, because she had vacation plans which she was unable to change. R. at 58. As a result, Ruben did not travel from Texas to Indiana for his visitation with M.R. on May 23, 1996.

The next day, Ruben filed a motion seeking to hold Linda in contempt for failing to comply with the express terms of the visitation order. As a result, on May 24, 1996, the trial court ordered Linda to appear before the court to show cause why she should not be held in contempt for failing to comply with the visitation order. On June 5, 1996, Linda filed a response to Ruben's motion for contempt, claiming that, although she was at home with M.R. on May 23, 1996, Ruben failed to appear for his visitation.

Thereafter, in July of 1996, Linda obtained new counsel, who again filed motions to set aside and clarify the visitation order. In support of her motion to set aside the visitation order, Linda attached an affidavit, in which she stated that Ruben had been physically, mentally and verbally abusive toward her and M.R. Ruben again responded to Linda's motions and, in addition, requested a permanent injunction pursuant to Ind.Trial

---

1. The record reveals a discrepancy regarding the date Ruben filed his motion for the issuance of a visitation order. According to Ruben, he filed the motion on April 17, 1996. However, because the motion did not reach the clerk's office, the same motion was refiled on May 6, 1996. R. at 306. However, the discrepancy does not affect this court's review.

Rule 65, based on Linda's failure to comply with the visitation order.

Several months later, on October 21, 1996, Linda filed a notice of intent to relocate to North Carolina with M.R. Later that day, Ruben filed a motion for an emergency hearing regarding visitation, alleging that Linda had consistently denied him visitation with M.R. since the parties' divorce and was attempting to flee the jurisdiction of the court. Soon thereafter, Linda relocated to North Carolina with her new husband and M.R.

On October 31, 1996, Linda filed a motion to contest the trial court's subject matter jurisdiction under the UCCJL. Specifically, Linda alleged that, because Ruben was a resident of Texas and she and M.R. were now residents of North Carolina, the trial court no longer had authority to rule on her motion to set aside the visitation order or Ruben's motion to find Linda in contempt. On November 15, 1996, Ruben filed a response, contending that the court had jurisdiction because Indiana was M.R.'s home state under the UCCJL.

In March of 1997, Linda again hired new counsel, who also filed motions to set aside the court's visitation order, to oppose Ruben's motion to hold her in contempt and to contest the court's subject matter jurisdiction under the UCCJL. Thereafter, on March 27, 1997, Linda filed a complaint in the North Carolina court, to establish jurisdiction there and to modify the Indiana court's May 8, 1996, visitation order. The North Carolina court set the matter for hearing on April 28, 1997, to determine whether it had jurisdiction to make a child custody determination.

On March 31, 1997, the Indiana trial court held a hearing on Linda's motion to set aside the visitation order and Ruben's motion to find Linda in contempt for failing to comply with the visitation order. Although Linda received notice of the hearing, she did not appear. As a result, Linda's counsel proceeded on her behalf, informing the court that another proceeding relating to the visitation and custody of M.R. had been filed in North Carolina on March 27, 1997. The court, however, determined that Indiana retained jurisdiction to rule on the parties' motions.

Linda's counsel then asked the court to set aside the visitation order which had been entered without a hearing. The court denied Linda's motion and proceeded with Ruben's motion to find Linda in contempt. Following the hearing, the court issued findings of fact and conclusions of law, finding Linda in contempt for failing to comply with the visitation order. The court also awarded Ruben attorney fees and authorized him to pay future child support payments in trust until further order of the court. Linda now challenges the trial court's rulings. Initially, she challenges the trial court's jurisdiction under the UCCJL.

## DISCUSSION AND DECISION

### I. Standard of Review

Initially, we note that Ruben has failed to file an appellate brief. Where an appellee fails to file a brief on appeal, we may reverse the trial court's judgment if the appellant demonstrates prima facie error. *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 460 (Ind.Ct.App.1993). However, we are not compelled to apply the prima facie error standard, but may, in our discretion, decide the case on the merits. *Roberts v. Johnson*, 625 N.E.2d 1288, 1290 (Ind.Ct.App.1993). Due to the nature of the issues involved in this appeal, we exercise such discretion here.

When a court enters findings of fact and conclusions of law at a party's request, as here, we determine whether the evidence supports the findings and whether the findings support the judgment. *Vanderburgh County Bd. of Com'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* The judgment is clearly erroneous when it is unsupported by the findings of fact. *Id.* We consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses. *Id.*

## II. Jurisdiction

Linda contends that the trial court erred by concluding that it retained jurisdiction over the contempt and visitation issues under the UCCJL. Although Linda concedes that the court originally had jurisdiction during the dissolution proceedings, she contends that because Ruben lives in Texas, the court lost jurisdiction when she and M.R. moved to North Carolina. Therefore, she contends that the trial court did not have power to enter its order and should have dismissed the proceedings before it.

The UCCJL[2] operates to restrict the existing power of a court to hear child custody and visitation issues. *Roberts,* 625 N.E.2d at 1290. Thus, when, as here, a court becomes aware of an interstate custody dispute, the court must engage in a multi-step process to determine whether it has subject matter jurisdiction and whether to exercise that jurisdiction. *Ashburn v. Ashburn,* 661 N.E.2d 39, 41 (Ind.Ct.App.1996), *trans. denied.*

The UCCJL provides, in relevant part, that a trial court has jurisdiction if Indiana is the "home state of the child at the time of *commencement of the proceeding."* IND. CODE § 31–17–3–3(a)(1)(A) (emphasis added). For purposes of the UCCJL, "home state" is defined as the "state in which the child, immediately preceding the time involved, lived with [her] ... parent ... for at least six (6) consecutive months." IND. CODE § 31–17–3–2(5). Further, while the child's presence in the state is desirable, it is not a prerequisite to confer jurisdiction upon the court. I.C. § 31–17–3–3(c).

Here, the record reveals that Linda filed her first motion to set aside the court's visitation order on May 15, 1996, and Ruben filed his motion to find Linda in contempt on May 23, 1996. The record further reveals that, when the motions were filed and during the previous six months, M.R. had resided with Linda in Indiana. Thus, M.R.'s "home state" at the time of the commencement of the proceedings was Indiana. Although Linda subsequently took M.R. and moved to North Carolina in October of 1996, this act alone did not divest the Indiana court of its jurisdiction. Thus, the trial court properly determined that it had jurisdiction under the UCCJL to rule on the parties' motions regarding the visitation order and contempt.

Nevertheless, Linda contends that the trial court improperly exercised its jurisdiction. Specifically, she contends that, because she and M.R. reside in North Carolina and Ruben lives in Texas, Indiana is an "inconvenient forum" pursuant to IND. CODE § 31–17–3–7.

Under the UCCJL, a trial court may decline to exercise its jurisdiction any time before issuing a decree if it finds that it is an inconvenient forum and that a court of another state is a more appropriate forum. IND. CODE § 31–17–3–7(a). In determining whether to relinquish its jurisdiction to a more convenient forum, a court is required to consider whether it is in the child's interest that another state assume jurisdiction. I.C. § 31–17–3–7(c). In making that determination, the court may consider the following factors;

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and [her] family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.[3]

Here, the record reveals that at the time the trial court entered its order on March 31, 1997, M.R. resided in North Carolina. However, because M.R. had not yet resided in

---

2. The provisions of the UCCJL are currently set forth in IND. CODE §§ 31–17–3–1 to 25, formerly IND. CODE §§ 31–1–11.6–1 to 25.

3. The purposes of the UCCJL are listed in I.C. § 31–17–3–1, formerly I.C. § 31–1–11.6–1.

North Carolina for six months,[4] Indiana remained her "home state" under the UCCJL. Further, most of the evidence regarding the original dissolution decree and subsequent visitation order remains in Indiana. Additionally, there is no evidence to suggest that the parties agreed on North Carolina as a more appropriate forum. Finally, allowing Indiana to retain jurisdiction would not contravene, but support, the UCCJL's policies of "assur[ing] that litigation concerning the custody of the child take place ordinarily in the state ... where significant evidence concerning his care, protection, training, and personal relationships is most readily available" and "deter[ring] unilateral removals of children undertaken to obtain custody awards." *See* IND. CODE §§ 31–17–3–1(3), (5). Therefore, the trial court did not error by exercising its jurisdiction under the UCCJL.[5]

### III. Motion To Set Aside Visitation Order

Next, Linda contends that the trial court erroneously denied her motion to set aside the May 8, 1996, visitation order which awarded Ruben both supervised and unsupervised visitation with M.R. According to Linda, the trial court was required, but failed, to hold a hearing prior to granting Ruben unsupervised visitation with M.R. As a result, Linda contends that she was unable to contest the unsupervised visitation and, therefore, was denied her right to be heard and fundamental fairness.

**4.** This court notes that, in the petition Linda submitted to the North Carolina court, she claimed that she relocated to North Carolina in September of 1996. R. at 110. As a result, M.R.'s "home state" at the time of the hearing may have been North Carolina. However, even assuming M.R.'s "home state" was North Carolina, when the trial court entered its order, this factor is only one of many which is considered in determining whether North Carolina was a more convenient forum. Considering that most of the evidence regarding the original dissolution decree and the subsequent visitation order remains in Indiana, and that the UCCJL's policies favor retaining jurisdiction in Indiana, we still cannot say that the trial court erroneously decided to exercise its jurisdiction.

**5.** Linda also contends that the trial court failed to "seriously" consider the jurisdictional issues and to enter findings or fact regarding the convenient forum analysis. Appellant's Brief at 11.

As Linda contends, the trial court specifically stated in the dissolution decree that Ruben would be allowed unsupervised visitation with M.R. only by "agreement of the parties or after additional hearing" on the matter. R. at 26. However, nothing in the record suggests that either of the two contingencies occurred. Further, although the record reveals that the trial court scheduled a hearing regarding the propriety of the visitation order, there is no indication that the hearing was ever held. Thus, we must conclude that the trial court erred by awarding Ruben unsupervised visitation with M.R. without first holding a hearing.

Nevertheless, we cannot conclude that the trial court's failure to hold a hearing resulted in reversible error. A trial court is not required to set aside an order that does not affect a party's substantial rights. Ind.Trial Rule 61. Thus, we will not reverse on appeal, if the order resulted in harmless error. *Bonnes v. Feldner,* 642 N.E.2d 217, 219 (Ind. 1994).

Here, the record reveals that prior to the March 31, 1997, hearing, Linda had not allowed Ruben any visitation with M.R. Thus, even if the trial court erroneously ordered unsupervised visitation without holding a hearing, we fail to see how Linda or M.R. was harmed. Furthermore, any error in denying Linda an opportunity to contest the visitation order was corrected once the March 31, 1997, hearing was held. During this hearing, Linda was given the opportuni-

However, even assuming the trial court failed to make a detailed inquiry into the jurisdictional issues, we cannot conclude that it is reversible error, as we have already determined that the court properly retained and exercised jurisdiction. *See Clark v. Atkins,* 489 N.E.2d 90, 94 (Ind.Ct.App.1986) (trial court's failure to determine whether it had jurisdiction under the UCCJL, did not constitute reversible error, where trial court in fact had jurisdiction), *trans. denied.*

We do note, however, that if Linda and M.R. continue to reside in North Carolina and Ruben continues to live in Texas, the Indiana trial court may lose jurisdiction under the UCCJL. Thus, in the future, if either Linda or Ruben files a motion regarding the custody of visitation of M.R., the court will be required to carefully review the provisions of I.C. § 31–17–3–3 and I.C. § 31–17–3–7.

ty to voice her concerns regarding the propriety and validity of the order. Although she failed to appear, the record reveals that Linda's counsel appeared on her behalf and contested the part of the visitation order which granted Ruben unsupervised visitation. R. at 305. Because Linda's rights were not substantially affected, we will not reverse the trial court's order denying her motion to set aside the visitation order.[6]

### IV. Contempt

Next, Linda contends that the trial court erroneously found her in contempt for failing to comply with the part of the court's order requiring her to allow Ruben supervised visitation with M.R. from May 23–26, 1996. Specifically, she contends that, because the visitation order failed to specify the "place of visitation," the order was void for vagueness. Appellant's Brief at 15. Therefore, she contends that she cannot be held in contempt for failing to comply with a vague order.

As Linda contends, a party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Clark v. Clark, 404 N.E.2d 23, 37 (Ind.Ct. App.1980). Otherwise, a party may be held in contempt for obeying an ambiguous order in good faith. Id. Rather, in order for a party to be found in contempt for failing to comply with a visitation order, the order must specifically set forth the time, place and circumstances of the visitation. Id.

Here, the record reveals that, after the court entered its order allowing Ruben visitation with M.R. from May 23–26, 1996, Linda filed a motion to clarify the terms of the visitation which the trial court subsequently granted. R. at 43. The court then specifically ordered the visitation to take place from May 23–26, 1996, from 11:00–3:00 p.m. daily, with supervision to be provided by Linda or someone that she designated. R. at 17. Although the court did not name a specific place for the visitation in the order, it was clear that the visitation was to occur wherever Linda or the person she designated

was present. Furthermore, Linda even conceded that Ruben was to come to "her home for the scheduled visitation" on May 23, 1996. Appellant's Brief at 15. Thus, we cannot conclude that the visitation order was vague.

Nevertheless, Linda contends that the evidence does not support a finding that she failed to comply with the visitation order. Specifically, she contends that, although she was willing to comply with the visitation order, Ruben failed to appear for his visitation with M.R. on May 23, 1996, the first date of his scheduled visitation. She further contends that, because Ruben served her with his contempt citation on May 22, 1996, the day before his scheduled visitation, he had no intention of exercising his visitation rights.

In order to support a finding of indirect contempt, it must be shown that a party willfully disobeyed a lawfully entered court order of which the offender had notice. Mitchell v. Stevenson, 677 N.E.2d 551, 558 (Ind.Ct.App.1997), trans. denied. Here, the record reveals that on May 13, 1996, after Ruben had been attempting to visit M.R. since the dissolution decree was entered in February of 1996, Linda was personally served with a copy of the court's order awarding Ruben visitation with M.R. from May 23–26, 1996. The record further reveals that on May 22, 1996, soon after the court clarified the visitation order, Linda faxed to Ruben's attorney a letter indicating that Ruben would not be able to visit M.R. from May 23–26, 1996, because she was unable to change vacation plans which she had previously made. Although Linda claims that she was "ready, willing and able to comply" with the court's visitation order, Appellant's Brief at 15, the court was in the best position to weigh the evidence and the credibility of the witnesses. Finally, we cannot say that Ruben acted unreasonably by declining to travel to Indiana or by filing his contempt citation a day before his scheduled visitation, after Linda made it clear to him that she did not intend to allow him to visit M.R. Thus, the

---

6. Linda also claims that she did not receive notice of Ruben's proposed visitation plan before the court entered its order and, therefore, did not have the opportunity to contest the plan. Having

already concluded the Linda had the opportunity to voice her concerns regarding the visitation order during the March 31, 1997, hearing, we find no reversible error.

evidence supports the trial court's conclusion that Linda was in contempt for violating the visitation order.[7]

### V. Future Child Support Payments

Finally, Linda contends that the trial court erroneously permitted Ruben to hold his future child support payments in trust until further order of the court. At the conclusion of the hearing on March 31, 1997, Ruben's attorney addressed the court as follows:

I fully anticipate that if you issue a[n] order finding her in contempt that she will ignore it, if you issue an order directing her to pay attorneys fees and costs, that she will ignore it. I would ask as part of this matter that until these issues are resolved that my client not be required, that any award for attorneys fees and cost[s] that be entered in this action that he be permitted to set off against the support obligation for the time being. Cause [sic] I think that's the only remedy that he is going to have over the short haul. R. at 371.

Following Ruben's attorney's remarks, the court made the following statement:

[T]he Court also has concerns that any [o]rder of this Court that would effect ... that support order might be construed as being a punitive order, which it would not. [sic] The Court will not grant any abatement of that support but the Court would consider a payment into ... money to be held in trust or escrow pending a resolution of all issues including the jurisdictional issues ... If I decide to do anything with support I would not abate it but I would consider escrowing it until a resolution of this matter. R. at 375.

Thereafter, in its final order, the court authorized Ruben to hold all "future child support payments as the payments become due in trust for the parties' minor child pending

further order of this Court." R. at 133. According to Linda, the order improperly permitted Ruben to withhold child support from M.R. to compel Linda's compliance with future orders of the court or as security for the payment of Ruben's attorney's fees, in violation of Indiana's policy of protecting the welfare of its children. We agree.

■ One of the purposes of child support is to provide a child with regular and uninterrupted support. *State v. Funnell*, 622 N.E.2d 189, 191 (Ind.Ct.App.1993). Thus, a parent may not withhold child support payments even though the other parent interferes with his court ordered visitation rights. *Moody v. Moody*, 565 N.E.2d 388, 391 (Ind. Ct.App.1991). Further, because a parent's child support obligation extends to the child and not the custodial parent, he is not permitted to withhold child support to set off a debt owed by the custodial spouse. *Funnell*, 622 N.E.2d at 190.

■ In the instant case, it is clear that Ruben has continuously been denied visitation with M.R. since the dissolution decree was entered in February of 1996. Further, there is no indication that Ruben has failed to provide M.R. with regular child support payments. Although we understand the court's attempt to ensure that Ruben is entitled to visitation and attorney fees, we cannot permit a parent to withhold support from his child in order to force a noncomplying parent to follow a court's order. Rather, Ruben's duty to support his child is completely separate and distinct from Linda's obligation to permit him visitation with M.R. and to pay his attorney fees. Because the court's order prevents M.R. from receiving regular and uninterrupted support, the trial court erred by allowing Ruben to hold his child support payments in trust, and we reverse on that issue.[8]

---

7. Linda also contends that the trial court erroneously awarded Ruben attorney fees and costs for matters related to the contempt proceedings. However, she has failed to present a cogent argument in support of her contention as required by Ind.Appellate Rule 8.3(A)(7). Therefore, she has waived this issue on appeal. *See Mullis v. Martin*, 615 N.E.2d 498, 500 (Ind.Ct. App.1993) (failure to present cogent argument

and authority in support thereof, results in waiver of issue on appeal).

8. Linda also argues that the trial court failed to enter findings of fact when it modified the child support order. However, because we have already concluded that the court's order was erroneous, we need not address this issue on appeal.

Judgment affirmed in part, reversed in part and remanded for proceedings not inconsistent with this opinion.

NAJAM and RILEY, JJ., concur.