**STATE OF VIRGINIA ex rel., Nancy W. BATEMAN, Appellant–Petitioner,**

v.

**Terence W. FOLEY, Appellee– Respondent.**

No. 45A03–9801–CV–17.

Court of Appeals of Indiana.

July 15, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, K.C. Norwalk, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Mark Warren Coleman, Mark Warren Coleman & Associates, Valparaiso, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-petitioner Nancy Bateman appeals from the trial court's order regarding her child support action, under the Uniform Reciprocal Enforcement of Support Act (URESA).[1] The trial court's order stated that there exists a continuing visitation dispute between Bateman and her ex-husband, Terence W. Foley, Appellee–Respondent, and that, therefore, a 1985 Porter County order abating the existing support order until resolution of the visitation dispute was in full force and effect. Specifically, Bateman argues that the trial court erred in finding that the visitation dispute had not been resolved and in calculating Foley's arrearage from the date of the 1996 child support action rather than from the date of a 1985 agreement signed by both parties in California. Bateman also argues that the trial court erred in ordering her to be present at a subsequent hearing regarding visitation, and that it contravened Indiana policy by ignoring a common law duty of parents, custodial or non-custodial, to support their children.[2]

---

1. Bateman originally brought this action under URESA, formerly codified at IND.CODE § 31–2–1–1 et seq. This statute was then repealed and the substantive provisions of the Uniform Interstate Family Support Act (UIFSA) now apply to this case. IND.CODE § 31–18–1–1 et seq.

2. Bateman also argues that the trial court was wrong to opine that Foley might have a laches defense. Because this matter was not part of the trial court's final order, we do not discuss it here.

## FACTS

Bateman and Foley were married on May 25, 1974. Their daughter, Jacklyn, was born on January 2, 1980. Bateman and Foley were divorced in Porter County on March 18, 1981. The final dissolution decree contained a support order stating that Bateman would have custody of Jacklyn, and that Foley would have reasonable rights of visitation with Jacklyn, upon twenty-four hours notice. The Porter County court also ordered Foley to pay $50 per week in child support and to assume all medical, dental, optical, and pharmaceutical costs, except for the first $100 per year, which would be paid by Bateman.

After the divorce, Bateman moved to California with Jacklyn without notifying the Porter County court. On February 26, 1985, that court issued an order (the 1985 order) abating Foley's child support payments until it was specifically reinstated by the same trial court. It provided that reinstatement would occur when the dispute over visitation was resolved either in California or Indiana. No appeal was taken from this order. Subsequently, in September 1985, the parties both signed an agreement in California (the California agreement), pursuant to which Foley would visit Jacklyn only in the presence of Bateman or another responsible adult. These terms were ordered because Bateman had alleged that Foley sexually abused Jacklyn. The agreement also provided that Foley would be allowed telephone contact with Jacklyn every Sunday morning.

The record reveals no actual visitation or telephone contact between father and child for the next eleven years. Until Foley received a notice of Bateman's child support petition of 1996, he had no awareness of his daughter's relocation to Virginia. Nor does the record reveal that, from 1985 to 1996, Bateman ever sought to collect child support or ever received AFDC payments. On March 22, 1996 the State petitioned the Lake Circuit Court in the instant action to enforce the original Porter County child support order contained in the divorce decree.[3]

On July 1, 1997, the Lake Circuit Court issued an order (the first 1997 order) finding that the visitation dispute noted in the 1985 order had not been resolved and therefore that order, which abated support payments, was still in force. This first 1997 order established that Foley had an obligation to support his daughter, and ordered Foley to commence paying $58.00 per week to the court clerk as child support to be held until the visitation issue was resolved. Furthermore, the first 1997 order required both Bateman and Foley to appear before the court on September 5, 1997.

Following the September 5, 1997 hearing, the Lake Circuit Court issued an order (the second 1997 order), which reiterated that the California agreement did not resolve the visitation dispute between the parties. It further ordered that the arrearage be calculated from the date that the State's petition was filed, March 22, 1996, which amounted to $3,800 as of September 5, 1997. Foley was further ordered to pay the original weekly amount of $50.00 ordered in the divorce decree, with an interest accruing on the arrearage at the rate of eight per cent per year. The court clerk was ordered to hold the money in trust. The prosecuting attorney was ordered to inform the court of Bateman's address.

Bateman filed an appeal from this decision in October 1997. The State filed its brief in February 1998. Foley requested dismissal of the appeal in March 1998. This court granted the motion to dismiss in June 1998, and denied Bateman's ensuing petition for rehearing in September 1998. Our Supreme Court, granted transfer on February 18, 1999, remanding the appeal to this court for a decision on the merits.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We note initially our standard of review. Generally, decisions regarding child support rest within the sound discretion of the trial court. *Beehler v. Beehler,* 693 N.E.2d 638, 640 (Ind.Ct.App.1998). This court will reverse a trial court's decision in

---

3. The action was apparently brought in Lake County, which borders Porter County, because Foley's employer was located there and was re-quired by court order to withhold income from Foley's salary.

child support matters only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.*

## II. The Visitation Issue and Support Calculation

Bateman first contends that the trial court erred in finding that the California agreement did not resolve the visitation issue between the parties. Specifically, she argues that the agreement resolved the matter by stating that Foley could only have supervised visitation with Jacklyn and telephone her weekly. As a result of this claimed error, Bateman maintains that the trial court also erred in calculating the arrearage in child support payments from the date of the 1996 child support petition rather than from the date of the California agreement.

■ We note initially that, even where a judgment is erroneous, it becomes the law of the case and binds the parties if no appeal is taken therefrom. *Huffman v. Huffman,* 623 N.E.2d 445, 448 (Ind.Ct.App.1993), *trans. denied.* Where the trial court has subject matter jurisdiction, mere errors of law in the trial court's judgment do not make the judgment void but rather voidable through an appeal. *Ondo v. Kemper,* 691 N.E.2d 1262, 1263 (Ind.Ct.App.1998).

■ In this case, we must first note our disagreement with the 1985 order abating child support payments pending a resolution of the visitation issue. This order was in error. *See Rendon v. Rendon,* 692 N.E.2d 889, 897 (Ind.Ct.App.1998)(noting that this court "cannot permit a parent to withhold support from his child in order to force a noncomplying parent to follow a court's order"). A parent may not withhold child support payments even though the other parent interferes with his court ordered visitation rights. *Id.*

■ However, we find that the 1985 order merely contains an error of law. It was therefore voidable, not void. *See Ondo,* 691 N.E.2d at 1263. It was the law of the case because no appeal was taken from it in the eleven years between the order and the 1996 child support petition. Therefore, it was binding on both parties. *See Huffman,* 623 N.E.2d at 448. For these reasons, when Bateman docketed her divorce decree in California, and that state obtained jurisdiction of this case, it obtained jurisdiction over a voidable but unchallenged order which was contingent. Therefore, we must explore whether or not the contingency was settled by the California agreement.

■ In ordinary circumstances, the Uniform Child Custody Jurisdiction Act should allow the California courts to settle disputes regarding custody and visitation. I.C. § 31–17–3–1 *et seq.* Furthermore, Bateman correctly contends that a hearing pursuant to a URESA/UIFSA petition should concern only issues of support and not matters such as visitation. Appellant's brief at 7. *See Egan v. Bass,* 644 N.E.2d 1272, 1274 (Ind.Ct.App. 1994) (under both URESA and UIFSA, court's jurisdiction is limited to support and paternity issues).

In the instant case, both the first and second 1997 orders correctly responded to Bateman's child support petition by determining that Foley had a duty to support his minor child. R. at 86, 104. The first order directed Foley to pay $58.00 per week in child support. R. at 86. However, the trial court was obliged by the law of the case to decide whether the visitation dispute referred to in the 1985 order was resolved. It ruled that the dispute had not been resolved by the California agreement. R. at 86. The second 1997 order reiterated these findings and concluded that the 1985 order was still in full force and effect. R. at 104. It then calculated Foley's arrearage, based on the date of the child support petition of March 22, 1996, found that Foley owed $3,800 as of the date of the order, and ordered Foley to make payments to the court clerk, along with eight percent per year interest. R. at 104–05.

■ At the hearings which preceded the 1997 orders, the court took the comments of the attorneys on both sides as being sworn testimony because Bateman was not present. On the basis of this testimony, we cannot say that the trial court erred in maintaining that the California agreement did not resolve the visitation issue.

The California agreement was, at the very least, open to more than one interpretation.

It provided for phone contact. R. at 28. It provided that Foley be "permanently enjoined from any visitation with their minor child ... except in the presence of [Bateman] or another responsible adult." R. at 27. The California agreement further provided that "the issue of additional and further specific visitation rights to [Foley] shall be reserved pending further order of Court." R. at 28. Foley's counsel noted at the hearing that his client did not know whether his daughter was dead or alive. R. at 124. He also stated that Foley had not known of his daughter's move to Virginia with Bateman until he was sent notice of the child support action. R. at 125. Foley's attorney referred to Bateman being "underground with this child for twelve years." R. at 133. He pointed out that for twelve years, no appeal was taken against the trial court's 1985 order nor was child support previously sought. R. at 130. No evidence appears in the record to suggest that Foley was ever successful in having supervised visitation or telephone contact with his daughter. Rather, the evidence suggests that Jacklyn's whereabouts were completely unknown to him, thus precluding him from bringing service against Bateman in pursuit of his visitation rights. R. at 124, 125, 130, 133.

For all of these reasons, we find that the trial court did not err in finding that the California agreement had not resolved the visitation dispute and that the 1985 order was thus in full force and effect. Nor did the court err in calculating the child support arrearage from the time of the 1996 child support petition.

■ Bateman next argues that the trial court erred in the first 1997 order, in requiring that she be present to testify regarding visitation. We agree with Bateman that the trial court hearing an UIFSA petition had no right to require her presence. I.C. § 31–18–3–16. Furthermore, the trial court does not have jurisdiction to explore anything but support issues under UIFSA. *See Egan,* 644 N.E.2d at 1274.

■ However, in this case, the trial court was obliged to look at the contingent issue of visitation because of the voidable, unchallenged 1985 order controlling the case. In any event, the court's requirement that Bateman appear at the second hearing was harmless error as the trial court ultimately resolved the support issue in the second 1997 order in favor of Bateman, who will receive support monies when the visitation issue is resolved. Furthermore, the court noted in the second hearing that it did not have jurisdiction to resolve visitation issues if the court had before it only a child support petition. R. at 146.

■ Finally, Bateman argues that the 1997 orders contravened Indiana policy that a non-custodial parent owes a duty to support a child. Under Indiana law both parents have an obligation to support their children. *Levin v. Levin,* 626 N.E.2d 527, 532 (Ind.Ct.App.1993), *aff'd* 645 N.E.2d 601 (Ind. 1994). Furthermore, this duty remains upon the non-custodial parent even when the custodial parent interferes with visitation. *See Rendon,* 692 N.E.2d at 897.

However, in this case, we have a unique result because a voidable but unchallenged order controlled this case from 1985 onward. We can only speculate what motivates a custodial parent not to appeal such an order, but to instead lose all contact with the non-custodial parent for over ten years, and then seek child support when the child is nearly emancipated. Bateman's appeal does not inform us of her reasoning. We can also only speculate whether the parties had a mutual understanding not recorded with the courts which might explain Bateman's inaction for the long period involved. However, our supreme court recently found that informal agreements regarding child support contrary to court order are not effective if they are not registered with the court. *Nill v. Martin,* 686 N.E.2d 116, 117 (Ind.1997).

■ Notwithstanding Bateman's claims, we do not find that the trial court contravened Indiana policy but rather we find that it did precisely what it had to do under the 1985 order, that is, seek to determine whether the visitation issue had been resolved. We observe that the result in this case, while perhaps limited to these unusual facts, may not be inequitable. Studies on the effects of the father's absence on child development, as well as studies of post-separation arrangements, give ample support to the view that

children need "regular and continuous contact with both parents even where the parents disagree with each other on many issues." DONALD T. SAPOSNEK, MEDIATING CHILD CUSTODY DISPUTES 63 (1983). By her failure to appeal the 1985 order abating child support, Bateman has forfeited the right to arguments she makes herein. Foley, on the other hand, has lost the time during which he could have formed a relationship beneficial to his daughter and to himself.

### CONCLUSION

In summary, we find that the trial court did not err in finding that the visitation dispute between Bateman and Foley had not been resolved by the California agreement which both signed in 1985, and thus, that the 1985 order from the Porter County court was in full force and effect. Additionally, we note that the trial court correctly calculated child support pursuant to the 1997 orders. While we agree with Bateman that the trial court erred in requiring her to be present at the second hearing on the child support petition, the error was harmless. Finally, we conclude that the 1997 order decided that which it was required to decide, namely that the 1985 order had never been appealed and was thus the law of the case. Thus, the 1997 orders do not contravene Indiana policy requiring support of children by non-custodial parents.

Judgment affirmed.

RUCKER, J., and BROOK, J., concur.