**Derek S. BURRELL, Appellant–Petitioner,**

v.

**Debbie I.R. LEWIS, Appellee–Respondent.**

**No. 49A04–0005–CV–209.**

Court of Appeals of Indiana.

Feb. 28, 2001.

Linda T. Jelks, Kopka, Landau & Pinkus, Indianapolis, Attorney for Appellant.

Scott Richardson, Indianapolis, Attorney for Appellee.

## OPINION

MATTINGLY, Judge.

Derek S. Burrell (hereinafter "Father") appeals an order of the trial court finding him in contempt and ordering him to pay fees for violating the terms of a custody and visitation order regarding his minor child. He makes six allegations of error, which we consolidate and restate as two: 1) whether the trial court had subject matter jurisdiction to hear the contempt petition, and 2) whether the trial court erred when it found Father in contempt and ordered him to pay appellee Debbie I.R. Lewis' (hereinafter "Mother") attorney fees and costs. We find that the trial court did have subject matter jurisdiction; however, we reverse on the issue of contempt.

## FACTS AND PROCEDURAL HISTORY

The trial court signed the parties' child custody order on May 5, 1999, and issued a subsequent order on July 26, 1999, amending a stenographer's error in the original custody order. The amended order gave Mother sole custody of the parties' minor child. It awarded Father visitation with the child for a varying number of days each month, as at the time of the order, Father lived in Indianapolis and Mother in Atlanta, Georgia. Both parties were to be responsible for a portion of the minor child's transportation back and forth between visits.

On August 16, 1999, Mother filed a Verified Motion for Contempt, alleging that Father had not abided by the terms of the visitation order regarding exchange dates

in August of 1999; nor had he maintained communication with Mother or allowed Mother telephonic access to the child during Father's visits. Father filed a bankruptcy petition on approximately September 23, 1999. (R. at 200.) The trial court held a hearing on Mother's contempt motion on October 12, 1999, and on December 15, 1999, the court issued an order finding Father in contempt and ordering him to pay within ninety days Mother's attorney fees and her costs expended on missed visitation exchanges. Father then brought this appeal. Additional facts will be supplied as needed.

## STANDARD OF REVIEW

At the outset, we note that Mother did not timely submit an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish *prima facie* error. *Fisher v. Board of Sch. Trustees*, 514 N.E.2d 626, 628 (Ind.Ct.App.1986). *Prima facie*, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct.App.1985). Where an appellant is unable to meet that burden, we will affirm. *Blair v. Emmert*, 495 N.E.2d 769, 771 (Ind.Ct.App.1986).

## DISCUSSION AND DECISION

Before addressing Father's allegations of error on appeal, we note our concerns about the tone and content of the brief submitted by Father's counsel. Counsel's Statement of Facts is rife with argument, which is inappropriate in that part of an appellate brief. A Statement of Facts should be a concise narrative of the facts stated in a light most favorable to the judgment and should not be argumentative. The Statement of Facts Father's counsel offers us is, by contrast, an at-tempt to discredit the trial court's judgment; it is clearly not intended to be a vehicle for informing this court. *County Line Towing v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 289 (Ind.Ct.App.1999). We also note that Father's Statement of the Case does not include a verbatim statement of the judgment, as is required by Ind. Appellate Rule 8.3(A)(4).

### 1. *Subject Matter Jurisdiction*

Father makes essentially a two-part argument with respect to subject matter jurisdiction. First, he alleges the trial court did not have subject matter jurisdiction over Mother's claim for expenses and attorney fees due to the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362. (Br. of Appellant at 10.) As Father filed a petition for bankruptcy on September 23, 1999, he contends the bankruptcy court had exclusive jurisdiction regarding all claims against him when the trial court heard Mother's claim on October 12, 1999. As a result, her claim should have been stayed. *Id.* at 11. Second, Father directs our attention to 11 U.S.C. § 523, the code section that lists certain debts which are not dischargeable in bankruptcy. He notes that although alimony, maintenance, and support are never dischargeable under § 523(a)(5), other marital debts are only nondischargeable after a claim is made for those debts in bankruptcy court. *Id.* at 13. He argues that as Mother's contempt petition is not a claim for alimony, maintenance, or support, and as Mother did not make a claim in bankruptcy court, the trial court's judgment therefore is void for lack of subject matter jurisdiction. *Id.* at 14.

We first note that Father concedes "the trial court, exercising continuing jurisdiction over post-divorce proceedings, has jurisdiction to hear matters related to visitation and Motions for Contempt for violations of a Child Custody and Visitation Order." *Id.* at 12. It is unclear from Father's argument how, given that the trial court did have jurisdiction to hear a

contempt issue related to visitation, the trial court would then lack subject matter jurisdiction to grant Mother's requests for a contempt finding, fees, and costs. Nevertheless, to avoid questions on this issue on remand, we address the issue of subject matter jurisdiction.

11 U.S.C. § 362, the automatic stay provision of the bankruptcy code, bars "the commencement or continuation ... of a[n] action ... to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." This provision contains an exception for alimony, maintenance, or support in § 362(b)(2)(B): "The filing of a [bankruptcy] petition ... does not operate as a stay ... of the collection of alimony, maintenance, or support from property that is not property of the estate." Father states that this exception to the stay does not apply (Br. of Appellant at 10), but he provides us with no authority or argument in support of that statement.[1] We find that Mother's contempt petition based on a visitation issue, and the trial court's subsequent award of attorney fees and costs to her, did fall within that exception.

This court previously reviewed a similar issue in *Reich v. Reich*, 605 N.E.2d 1178 (Ind.Ct.App.1993). In that case, this court upheld an award of attorney fees against the mother in a contempt action after the mother failed to allow the father his scheduled visitation access to the minor children. We noted in that case the trial court "clearly had jurisdiction over the visitation issue" despite the father's pending bankruptcy. *Reich*, 605 N.E.2d at 1183.

We also find the trial court had jurisdiction based upon reasoning applied in many federal bankruptcy cases interpreting the nondischargeability provisions in 11 U.S.C. § 523(a)(5). In *In Re Ray*, 143 B.R. 937 (D.Colo.1992), the bankruptcy court found a contempt judgment in a custody case to be nondischargeable for the debtor/mother; that judgment required the mother to reimburse the father for his attorney fees expended in bringing the contempt action. Since the purpose of the underlying custody action was to determine the best interests of the parties' minor child, the attorney fees award was *in the nature of child support* and therefore nondischargeable under 11 U.S.C. § 523(a)(5):

> [M]ost courts hold that fees "inextricably intertwined with proceedings affecting the welfare of the child," such as custody and visitation, should be deemed support ... accordingly, since the underlying character of the litigation [in the instant case] involved the welfare of their child, fees awarded in that litigation should be considered "support" ... it is in the best interests of the children to have custody matters fully and fairly litigated. Insuring this is done is part of the debtor's duty to support his children ... [t]hus, sound public policy supports the nondischargeability of debts for attorney fees in custody and visitation proceedings.

*In Re Ray*, 143 B.R. at 940, 941 (citations omitted). (See also *In Re Hendricks*, 248 B.R. 652, 657 (Bankr.M.D.Fla.2000): "Courts have differed, however, when the award of attorney's fees relates to a post-dissolution proceeding involving custody. Some courts have found that the award can be characterized as support, while other courts have not reached this conclusion. A majority of courts have held that an award of attorney fees incurred in a custody proceeding is nondischargeable ... *In Re Schwartz*, 53 B.R. 407 (Bankr.S.D.N.Y. 1985); *In Re Jones*, 9 F.3d 878 (10th Cir. 1993); *In Re Catlow*, 663 F.2d 960 (9th Cir.1981). Some courts reason that the proceeding affects the welfare of the child and is thus in the nature of support of the

---

1. The only statement in Father's brief regarding this exception is as follows: "some exceptions exist for child support, maintenance and alimony, none of which are at issue here." (Appellant's Br. at 11.)

child. *In Re Jones,* 9 F.3d at 881, citing *In Re Poe,* 118 B.R. 809, 812 (Bankr. N.D.Okla.1990).")

There are additional cases that apply this reasoning regarding debts *in the nature of support* directly to the stay provision in 11 U.S.C. § 362. In *Terio v. Terio,* 1994 WL 141980, *5 (S.D.N.Y.1994), the court found a debt for attorney fees that qualified as nondischargeable support also was not subject to the automatic stay:

Terio contends that the defendants' proceeding to collect attorney's fees incurred in connection with the "collection of alimony, maintenance or support" does not fall within the automatic stay exception of 11 U.S.C. § 362(b)(2). We reject this contention. In *In Re Spong,* 661 F.2d 6 (2d Cir.1981), we held that legal fees incurred in connection with a divorce proceeding fall within 11 U.S.C. § 523(a)(5), which renders debts for alimony, maintenance or support nondischargeable. We also noted that most state courts and bankruptcy courts considered counsel fees to be within the definition of alimony, maintenance and support. *Id.* at 9. [*See, e.g., In Re Peters,* 964 F.2d 166, 167 (2d Cir.1992) (per curiam).] Our reasoning in *Spong* therefore clearly indicates that the award of attorney's fees incurred in collecting alimony, maintenance or support falls within the exception to the automatic stay of section 362(b)(2).

(See also *In Re Gianakas,* 112 B.R. 737, 741 (W.D.Pa.1990): "The determination by the court below and by this Court that an obligation is in the nature of alimony, maintenance or support is the same inquiry whether the court is determining dischargeability of the debt or exemption from the automatic stay allowing the movant to proceed against non-estate assets of the debtor.")

We find the reasoning in this line of bankruptcy cases to be persuasive; thus, we disagree with Father's argument that contempt judgments based upon a visitation dispute would be dischargeable in bankruptcy, thus making the trial court's judgment void. The trial court had subject matter jurisdiction to hear the contempt action and to award Mother attorney fees and costs in that action.

2. *Violation of an Ambiguous Order*

■ The trial court found Father in contempt for "[f]ailure to comply with this court's orders regarding transportation and communication." (R. at 108.) In his second allegation of error, Father argues the trial court should not have found him in contempt because the original order contains ambiguous language, and as a matter of law he cannot be held in contempt for violation of an ambiguous order. We agree with Father's contention that the original order dated May 5, 1999 (as amended by the order dated July 26, 1999) is ambiguous.

The pertinent portion of the original custody order (including amendments) reads as follows:

9. Father should have four (4) visitation periods of fifteen (15) days each and eight (8) visitation periods of eight (8) days each during odd numbered years and three (3) visitation periods of fifteen (15) days each and nine (9) visitation periods of eight (8) days each in even numbered years. Visitation periods are designated to occur during a calendar month, but when the visitation involves a holiday, it may begin in the preceding month or end in the following month.

10. Father's visitation schedule should be as follows:

JANUARY: Beginning on the third Saturday and ending on the fourth Sunday.

FEBRUARY: Beginning on the second Saturday and ending on the third Sunday.

MARCH: Beginning on the second Saturday and ending on the third Sunday.

APRIL: In odd numbered years beginning on a Saturday of Father's choice and ending on a Sunday eight (8) days later not to include Easter Sunday. In even numbered years beginning on the Saturday before Easter Sunday and ending on the Sunday following Easter Sunday.

MAY: In odd numbered years beginning on the Saturday preceding Memorial Day to the Sunday following Memorial Day. In even numbered years from the Saturday following Mother's Day to the second Sunday following Mother's Day.

JUNE: Beginning on the second Saturday and ending on the third Sunday.

JULY: Beginning on the Saturday preceding July 4 and ending on the third Sunday following the Saturday preceding July 4.

AUGUST: Beginning the first Saturday and ending on the third Sunday.

SEPTEMBER: Beginning the first Saturday and ending on the third Sunday.

OCTOBER: Beginning the second Saturday and ending on the third Sunday.

NOVEMBER: In odd numbered years beginning the second Saturday and ending the third Sunday. In even numbered years beginning the Saturday preceding Thanksgiving Day and ending on the second Sunday following the Saturday preceding Thanksgiving Day.

DECEMBER: In odd numbered years beginning on the Saturday preceding Christmas Day to the third Sunday following the Saturday before Christmas Day. In even numbered years beginning on the second Saturday and ending on the third Sunday.

(Supp. R. at 4–5.)[2] We find this portion of the order is ambiguous, as the terms of paragraphs nine and ten conflict. Specifically, paragraph nine awards Father four visitation periods of fifteen days each in odd-numbered years and three visitation periods of fifteen days each in even-numbered years. However, the more specific schedule in paragraph ten with starting and ending days does not provide Father with as much visitation time as does the language in paragraph nine, as the trial court failed to consider the effect on its schedule of months that begin on a Sunday. Because in any given year there will always be at least one month that begins on a Sunday, Father will always have less actual visitation than paragraph nine provides.

For example, the schedule in paragraph ten provides that in October, Father shall have visitation "[b]eginning the second Saturday and ending on the third Sunday"; however, in the year 2000, the month of October began on a Sunday. Thus, under the schedule, Father's visitation in October 2000 would have begun on October 14 and ended on October 15, depriving Father of six of the eight days he would normally have in the month of October. Nowhere in paragraph nine did the trial court describe visitation periods for Father of only two days; thus, this cannot have been the intended result.

Similarly, in 1999, the month of August began on a Sunday. Under the schedule Father was to have visitation "beginning the first Saturday and ending on the third Sunday." Thus, under the schedule Father would have visitation from August 7 until August 15, a period of eight days.[3] However, in August of 2000 and in August of every year thereafter until 2006 (another year in which the first day of August happens to fall on a Sunday), Father would have a visitation period of fifteen days under the schedule because in all of those

2. The original order dated May 5, 1999, was not included in the Record provided to this court on appeal.

3. Father returned the minor child to Mother on approximately August 20, 1999. (R. at 187.)

years August would not begin on a Sunday. This leads to the result that in the year 1999, Father would have only three visitation periods of fifteen days each instead of four periods of fifteen days each as prescribed for odd-numbered years in paragraph nine of the court's order. Again, this cannot have been the intended result. Thus, the order is ambiguous.

 In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Piercey v. Piercey*, 727 N.E.2d 26, 31 (Ind. Ct.App.2000). A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Rendon v. Rendon*, 692 N.E.2d 889, 896 (Ind.Ct.App. 1998). Otherwise, a party could be held in contempt for obeying in good faith an ambiguous order. *Id.* Rather, in order for a party to be found in contempt for failing to comply with a visitation order, the order must specifically set forth the time, place and circumstances of the visitation. *Id.*

The pertinent portion of the order finding Father in contempt reads as follows:

4. The Court further finds that the order did not specify which months were to have fifteen (15) day visits and which were to have eight (8) day visits. The order also did not specify that the longer visits would occur during the summer months. Therefore, the specific language which provided a visitation period of eight (8) days for August 1999 controls....

\* \* \*

6. Despite receiving notice that [Mother] would pick up the child on August 15, 1999, [Father] failed to return the child in a timely manner.

7. [Father] has repeatedly failed to pick up and return the child in a timely manner resulting in [Mother] incurring additional transportation costs and related expenses in May, August and October.

\* \* \*

8. In addition, [Father] failed to advise [Mother] of the whereabouts of the child during visits so she could have daily telephone contact as provided in the Court's order.

9. The Court finds [Father] in contempt of court for failure to comply with this Court's orders regarding transportation and communication. The Court orders [Father] to pay [Mother's] costs of $1,696.65 plus attorney fees of $2,000.00 within ninety (90) days.

(R. at 107–108.) We are unable to find that Father acted with willful disobedience because the underlying order was ambiguous and therefore failed to provide Father with one clear mandate to obey.[4]

In paragraph nine above, the trial court found Father in contempt for violating "transportation and communication" orders. In paragraph sixteen the trial court found Father was in violation of the visitation order when he failed to return the child to Mother on August 15, 1999. Furthermore, in paragraph nine the trial court awarded a sanction against Father in the amount of $1,696.65; that sum included $1,263.25 which Mother expended on the missed August visitation exchange. (R. at 179.) The trial court relied on the missed August exchange when finding Father in contempt. Our standard of review requires us only to find *prima facie* error for reversal, and we find such error based upon the trial court's consideration of the alleged August violation in its contempt finding. As a result, we reverse the trial court's finding of contempt and its award of attorneys fees and costs against Father.

4. Additionally, we note our concern about Mother's failure to promptly notify Father of her travel plans regarding the August 1999 visitation exchange, thus further complicating the situation and inhibiting Father's ability to comply with the order. (R. at 161.)

Reversed and remanded for proceedings consistent with this opinion.

MATHIAS, J., and ROBB, J., concur.