### In re the ADOPTION OF R.L.R., Minor Child.

### No. 82A01–0208–CV–309.

Court of Appeals of Indiana.

Feb. 26, 2003.

---

John Andrew Goodridge, Miller & Associates, Evansville, IN, Attorney for Appellant.

## OPINION

FRIEDLANDER, Judge.

Jennifer Rakestraw appeals the trial court's use of a nunc pro tunc entry in denying her petition for Adoption of R.L.R., who is the biological child of Rakestraw's husband (Father) and Lisa Ann Deer (Mother). She presents the following issues for review;

1. Did the trial court err in utilizing a nunc pro tunc entry to deny Rakestraw's petition for adoption?

2. Did the trial court err in denying her petition for adoption?

We reverse and remand with instructions.

This appeal represents the second time that this matter has come before us. The previous appeal was decided in an unpublished memorandum decision. We set out the relevant underlying facts in the original appeal as follows:

R.L.R. was born in 1991 and ... Father and Mother divorced in 1993. At the time of the divorce, Mother was awarded custody. However, Mother became dependent upon drugs, and Father was awarded custody in 1997. Mother was granted supervised visitation at that time. Father married Jennifer in 1998 after they had lived together for two years. Following the award of custody to Father, Mother's drug use worsened. Mother then moved to Kansas and was eventually arrested and spent six months in jail. After her release from jail, she moved back to Indiana and entered a treatment program for her addiction. Mother has been clean and sober for approximately three years. During the time that she was in Kansas, and the first year following her return to Indiana, Mother did not attempt to make any contact with R.L.R. except to send a Christmas present to Father's workplace for R.L.R. The time without any contact amounted to approximately three years. Mother also failed to pay any child support until September 2000.

On September 29, 2000, Mother filed a Petition to Modify Visitation, in which she sought unsupervised visitation. In response, Father filed a Motion to Suspend Visitation and Jennifer filed a Petition for Adoption, to which Father consented but Mother did not. In November 2000, a Magistrate ordered that visitation by Mother be suspended pending the outcome of the adoption proceedings. Following a hearing on the Petition for Adoption, the trial court denied the Petition without any findings of fact or conclusions of law. Jennifer filed a Motion to Correct Errors, which was also denied without findings of fact or conclusions of law.

*In re the Matter of Adoption of R.L.R.,* No. 82A05–0111–CV–495, slip op. at 2–3 (Ind.Ct.App. April 30, 2002).

Jennifer appealed the original decision, arguing that the trial court erred in failing to make an initial determination of whether consent to permit the adoption was required by the biological mother. We examined the relevant statute, Ind.Code Ann. § 31–19–11–1 (West, PREMISE through 2002 1st Special Sess.), which provides that "before an adoption petition shall be granted, the trial court must find that the adoption would be in the best interest of the child and that proper consent, if necessary, has been given." *In re the Matter of Adoption of R.L.R.*, No. 82A05–0111–CV–495, slip op. at 4. We noted that consent is not required if

A parent of a child in the custody of another person ... for a period of at least one (1) year ...:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

I.C. § 31–19–9–8 (West, PREMISE through 2002 1st Special Sess.). After examining the facts, we concluded that "Jennifer has shown by clear, cogent, and indubitable evidence that Mother has failed to communicate with R.L.R. for a period greater than one year when she was able to do so." *In re the Matter of Adoption of R.L.R.*, No. 82A05–0111–CV–495, slip op. at 6. This, in turn, led us to the "inescapable conclusion" that Mother's consent was not required in order for the adoption proceeding to take place. *Id.* Finally, we concluded that, "after making such a finding, the trial court should then have determined whether the adoption of R.L.R. by Jennifer would be in the best interests of R.L.R." *Id.* We declined Jennifer's request to rule that the adoption would be in R.L.R.'s best interests, and instead re-

manded to the trial court to make that determination.

We come now to the facts particularly germane to this appeal. On July 12, 2002, more than two months after we decided *In re Adoption of R.L.R. I*, the trial court made the following entry in the record, which we shall refer to hereafter as the "nunc pro tunc entry":

The parties having appeared in person and by counsel on the agreed date for the hearing of this cause and the Court having heard the evidence and having taken the cause under advisement now finds that the natural mother failed to pay child support and failed without justifiable cause to communicate with the child when able to so do and natural mother's consent to the adoption in this cause is not therefore required under the terms of the applicable statute; that the natural mother has no present substance abuse problem and has been clean and sober for approximately three years, that the natural mother desires parenting time with her child, that the child resides in the custody of the natural father and with the petitioner step mother [sic] in the same locale where the natural mother resides, that the child is there doing well; that the strong presumption favoring the natural mother maintaining her parental rights and that that course is in the best interests of this child was not in this cause clearly and convincingly overcome by the evidence presented, that the evidence presented does not show that the best interests of this child wouldbe [sic] substantially and convincingly served by the granting of this adoption petition and that this adoption petition should, therefore, be denied.

*Appellant's Appendix* at 23.

■ We note at the outset that, as was the case in *R.L.R I*, Mother has de-

clined to file an appellate brief. When an appellee fails to file an appellate brief, we apply a less stringent standard of review. *Burrell v. Lewis*, 743 N.E.2d 1207 (Ind.Ct. App.2001). We may reverse if the appellant establishes prima facie error. *Id.* "Prima facie error" is error at first sight, on first appearance, or on the face of it. *Id.* We will affirm if the appellant fails to sustain this burden. Finally, we will not undertake the burden of developing arguments in favor of the appellee. *Id.*

### 1.

▮▮▮ Jennifer contends that the court erred in entering the order on July 12, 2002 as a nunc pro tunc entry, dated August 13, 2001. She is correct. Our supreme court has explained the definition and purpose of a nunc pro tunc entry as follows:

A nunc pro tunc entry is defined in law as "an entry made now of something which was actually previously done, to have effect as of the former date." *Perkins v. Hayward* (1892), 132 Ind. 95, 101, 31 N.E. 670, 672. Such an entry may be used to either record an act or event not recorded in the court's order book or to change or supplement an entry already recorded in the order book. Its purpose is "to supply an omission in the record of action really had, but omitted through inadvertence or mistake." *Perkins*, 132 Ind. at 101, 31 N.E. at 672.

The trial court's record, however, must show that the unrecorded act or event actually occurred. Thus, this Court has required that a written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order. In order to provide a sufficient basis for the nunc pro tunc entry, the supporting written memorial

(1) must be found in the records of the case; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described.

*Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (quoting *Stowers v. State*, 266 Ind. 403, 363 N.E.2d 978, 983 (1977)).

Pursuant to the aforementioned principles, the nunc pro tunc entry was appropriate only if the record before us demonstrates that the trial court determined, *at the conclusion of the hearing on the adoption petition*, that adoption was not in R.L.R's best interests. The record does not so indicate. Rather, it appears that the trial court made that determination retrospectively, viz., after the matter was remanded by this court following *R.L.R I*. We conclude, therefore, that the denial of the adoption petition was based upon an invalid entry.

### 2.

▮▮▮ Our conclusion that the nunc pro tunc entry denying the adoption petition was invalid means that, technically, there is no ruling before us. In such a case, we would ordinarily decline to review the substance of the ruling and would remand for further proceedings. This, however, is not an ordinary case.

First and foremost, the subject matter of this action is particularly time-sensitive. Although there is no looming deadline in this adoption proceeding, we are mindful that this decision has a profound impact upon a child's life. The uncertainty that attends such situations while relevant legal proceedings wend their way to a conclusion cannot be understated—and must be minimized where possible. For this reason, we are loath to remand the case for additional proceedings at a cost of still

further delay. Second, although we have stricken the trial court's nunc pro tunc entry, that order reflects the trial court's conclusion that adoption would not be in R.L.R's best interests. There is no reason to conclude that the trial court's decision would be different upon remand, especially after the trial court has already conducted the hearing at which it received evidence relevant to that determination. This brings us to the third and final consideration. Jennifer petitioned this court to incorporate into the appellate materials for the instant appeal the record and appendix filed in conjunction with *R.L.R I*. We granted that motion and those materials are before us. Because we have at our disposal the materials from which the trial court made its ruling, and for the sake of judicial economy, we will address the issue of whether the trial court erred in denying Jennifer's petition to adopt *R.L.R.*

 We will not disturb the trial court's decision on a petition for adoption unless the evidence at trial leads to but one conclusion and the trial court reached the opposite conclusion. *In re Adoption of A.M.K.*, 698 N.E.2d 845 (Ind.Ct.App.1998), *trans. denied.* In conducting our review, we will not reweigh evidence or judge witness credibility, and will examine the evidence in a light most favorable to the ruling. *Id.*

As recounted above, Mother and Father divorced in 1993 when R.L.R was less than two years old. Mother was awarded custody of R.L.R. During the next four years, Mother began using illegal drugs. Not surprisingly, this did not provide a good environment in which to rear R.L.R. By way of example, Eric Egan testified that he went to Mother's house in 1996 to buy narcotics. He observed R.L.R. "cowering" in the corner. *R.L.R. I Transcript* at 34. After R.L.R. was removed from Mother's custody in 1997 and placed with Father,

Mother moved to Kansas. There, her drug use continued and she eventually was convicted of a criminal offense and incarcerated. During that time, she did not attempt to maintain contact with R.L.R., and she did not pay child support.

Meanwhile, Jennifer and Father began living together about the same time that Father gained custody of R.L.R. Jennifer and Father married in March of 1998. Functionally, Jennifer assumed the role of R.L.R.'s mother. By all accounts, the two developed a close and nurturing relationship. The principal at R.L.R.'s school testified that Jennifer is actively involved at R.L.R.'s school, and described Jennifer and R.L.R.'s relationship as follows:

> Loving, very connected. [R.L.R.] uses Jenny and mom as the same word. Tells me how much fun they have. Just wholesome loving. I had no idea that Jenny wasn't her biological mother for a long time. Um, I'd transport [R.L.R.] sometimes, one time she was recognized for PTA and Jenny wasn't able to go there and she was telling me funny stories about Jenny and said she's my best friend, she's mom. Um, nothing but positive.

*Id.* at 24. Several other witness testified that R.L.R. called Jennifer "mom" or "mommy" *E.g., id.* at 28.

Three of Mother's sisters testified at the hearing. Two of them testified on Mother's behalf. The gist of their testimony was that Mother had changed her life and had not used drugs for more than two years. They testified that Mother had a genuine desire to establish a maternal relationship with R.L.R. When asked if they had anything negative to say about Jennifer or her parenting abilities, they responded that they did not. A third sister, Pamela Jeffries, described an especially close relationship with R.L.R. She testified that she visited R.L.R. two to five times

per week, which they spent baking, sewing, painting, and doing crafts. She was asked, "Do you know of any reason why [the trial court] would not approve a petition of adoption of Jennifer?" *Id.* at 28. She responded, "No I don't. No I don't." *Id.*

Of particular significance is a home study report completed by the Vanderburgh County Office of Family and Children (VCOFC) in conjunction with the instant adoption proceeding. The VCOFC report described the Rakestraws' house as "neat and clean and appropriately furnished" and located in a "quiet middle[-] class neighborhood." *Appellant's Appendix* at 8. It described R.L.R. as follows: "[R.L.R.] is a cute nine year old young lady having been born on November 17, 1991. She was eager to endorse the idea of her adoption by her step-mother. She appears to get along well with and have an excellent relationship with Jenifer [sic]." *Id.* at 9. At the end of the report, the VCOFC reported the following conclusions and recommendations:

> The Rakestraw family are [sic] very comfortable with one another. There was an easy exchange of information and some teasing during the interview. [R.L.R.] is very complimentary about her relationship with her stepmother. She is very enthusiastic about her adoption by Jenifer [sic].
>
> With the information currently available to me, along with my observations of the family, I have found no reason why Jenifer [sic] Rakestraw's petition to adopt her stepdaughter, [R.L.R.] should not be granted.

*Id.* at 12.

We think the following is a fair summary of the situation presented to the trial court. R.L.R.'s approximately three years with Mother following the divorce were marked by Mother's drug use and deteriorating mental and emotional condition. When R.L.R. went to live with her father and Jennifer, Mother dropped out of her life. For more than three years, R.L.R. had no contact, either direct or indirect, with her Mother. Upon returning to Indiana, Mother did not attempt to contact R.L.R. for at least one year. During all of this time, R.L.R. and Jennifer established a strong relationship. It has become, by all accounts, a healthy mother-daughter relationship. R.L.R., who is by now eleven years old, is in favor of the adoption. This is not surprising, in view of the fact that for the last half of her life she has lived happily in a household where she has come to regard Jennifer as "mom." Indeed, the relationship between Jennifer and R.L.R. was described by all witnesses as active, nurturing, and healthy. Conversely, R.L.R. has no relationship with Mother.

These facts lead to but one conclusion: The petition for adoption filed by Jennifer should be granted. The trial court erred in concluding otherwise. Although we are sympathetic with Mother's desire to establish a relationship with her daughter, we are constrained to view this situation from R.L.R.'s perspective, not Mother's, and we must remained focused on the paramount consideration—R.L.R.'s best interests. However laudable Mother's desire and intentions might be, they do not erase the difficulty and trauma of the years R.L.R. spent with Mother and suffered from Mother's drug addiction. Neither do they change the fact that R.L.R. has established a strong, loving, healthy, mother-daughter relationship with Jennifer. To ignore these facts places R.L.R. at risk of significant emotional upheaval, confusion, and turmoil. This would certainly not be in R.L.R.'s best interests.

We note in conclusion that this ruling does not, in and of itself, foreclose the possibility of Mother re-establishing a rela-

tionship with R.L.R. That is to say, the granting of Jennifer's petition for adoption is not tantamount to the establishment of a no-contact order with respect to Mother and R.L.R. We note in this regard that Mother's sisters were permitted to, and did indeed, maintain their relationships with R.L.R., even while Mother severed contact with R.L.R. Thus, there is no reason to conclude that Mother would not also be allowed to develop a relationship with R.L.R. under the appropriate circumstances.

Judgment reversed and remanded with instruction to grant Jennifer's Petition for Adoption.

BROOK, C.J., and MATTINGLY–MAY, J., concur.