Mark S. MURFITT, Appellant–Respondent,

v.

Vickie MURFITT, Appellee–Petitioner.

No. 43A03–0308–CV–316.

Court of Appeals of Indiana.

April 15, 2004.

Mark S. Murfitt, Pendleton, IN, Appellant pro se.

## OPINION

SULLIVAN, Judge.

Mark Murfitt appeals pro se from the trial court's order distributing the marital property following the trial court's granting of Mark's wife's petition for dissolution of marriage. He presents three issues for our review, two of which we consolidate into the sole issue addressed in this decision: whether the trial court erred in denying Mark alternative methods, including the appointment of counsel, to represent his interests at trial.

We reverse and remand.

We begin by noting that Mark's ex-wife, Vickie, failed to file an appellee's brief. When the appellee does not submit a brief, we apply a less stringent standard of review with respect to showings of reversible error. *Burrell v. Lewis*, 743 N.E.2d 1207, 1209 (Ind.Ct.App.2001). We may reverse if the appellant establishes prima facie error, that is, an error at first sight, on first appearance, or on the face of it. *Id.* When the appellant fails to sustain that burden, we will affirm. *Id.* We do not undertake the burden of developing arguments for the appellee. *Id.*

On May 29, 2001, the day that Vickie filed her petition for dissolution of marriage, Mark was incarcerated. After receiving service, Mark filed a cross-claim, requesting that the trial court enter an equitable division of their personal property. With his request, he included an itemization of their personal belongings and the purported value of each. Shortly thereafter, Mark filed a motion for change of judge. While the change of judge was pending, Mark also filed a lengthy docu-

ment entitled "documentary evidence" which the trial court ordered be made part of the file for the special judge. After the special judge was appointed, it was determined on August 9, 2002, that it was in the best interests of the parties if the hearing be scheduled for a time after Mark's release from the Indiana Department of Correction. However, on June 9, 2003, Mark filed a motion to set cause for trial after July 8, 2003, along with an affidavit concerning the documentary evidence. The trial court scheduled the hearing for June 27, 2003. Mark subsequently filed a motion requesting alternative hearing methods so that he could take part in the hearing. The trial court denied that motion. Mark then filed a motion for a continuance, a motion for appointment of counsel as an indigent person, and a motion for transport order. The trial court denied the motions for transport and counsel, but did not enter an order for the motion for continuance. However, the Chronological Case Summary indicates that the trial court sent a notice to Mark on June 25 requiring that he inform the court of his release date. On June 27, the trial court conducted a hearing in which Vickie presented evidence in response to questions proffered by the trial court.

During questioning, Vickie denied that she and Mark had any real property or debts. She acknowledged that they had some household goods and furnishings and that she had some of Mark's clothes. The trial court also questioned Vickie about whether she had received a personal injury settlement in 2000. The trial court learned of the personal injury settlement through a proposed property settlement agreement submitted prior to the hearing by Mark.[1] However, Vickie never an-

---

1. From a reading of the transcript, and based upon inferences to be drawn from the dissolu-

swered the trial court's questions about whether a personal injury settlement existed, apparently because she was under a mistaken understanding of what the trial court was questioning her about. This is evident through her responses because Vickie kept referring to two occasions on which Mark had allegedly hit her and the police were called. Following the conclusion of Vickie's testimony, the trial court took the matter under advisement and entered a written decree dissolving the marriage and ordering that Vickie deliver all of Mark's personal effects to his mother. The trial court did not expound upon what those personal effects included.

█ Upon appeal, Mark claims that the trial court should have granted the motion for alternative means for conducting a hearing so that he could take part and defend his interests. In his motion, Mark noted that the trial court could not secure Mark's attendance at or transportation to a civil action unrelated to the case resulting in the incarceration. *See Brown v. State*, 781 N.E.2d 773 (Ind.Ct.App.2003); *Zimmerman v. Hanks*, 766 N.E.2d 752 (Ind.Ct.App.2002); *Hill v. Duckworth*, 679 N.E.2d 938 (Ind.Ct.App.1997). In that same motion, Mark also noted some alternative means by which the hearing could be conducted, including: (1) a telephonic conference, (2) securing someone else to represent him, (3) postponing the hearing until he was released, or (4) submitting the case to the court by documentary evidence. *See Hill*, 679 N.E.2d at 940 n. 1.

Once the motion for alternative means for conducting a hearing was denied, Mark sought the appointment of counsel, which was the only available means by which he

could represent his interests if he could not physically take part in the hearing. Indiana Code § 34–10–1–2 (Burns Code Ed. Supp.2003) provides that a trial court may assign an attorney under exceptional circumstances to prosecute or defend an action in a civil case for an indigent person. The factors which the court may consider include the likelihood of the applicant prevailing on the merits of the claim or defense and the applicant's ability to investigate and present the claim or defense without an attorney, given the type and complexity of the facts and legal issues in the action. *Id.*

█ This court has noted on several occasions the constitutional right of a prisoner to bring a civil action as provided by Article 1, Section 12 of the Indiana Constitution. *E.g.*, *Zimmerman*, 766 N.E.2d at 757. Article 1, Section 12 states that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay." In *Zimmerman*, this court noted that implicit in the right to bring a civil action is the right to present one's claim to the trial court. 766 N.E.2d at 757.[2] In this case, Mark was not afforded the opportunity to protect his own interests in the divorce proceedings because he could not present his claim in regard to a distribution of the marital property. Moreover, he was not given the opportunity to present any evidence or challenge Vickie's credibility regarding the assets and debts which they had accumulated. Concluding that Mark's constitutional

tion decree, it does not appear that the trial court reviewed any of the other documentary evidence submitted by Mark, but only the proposed settlement agreement which was

submitted two months after the other material.

**2.** The right includes the right to defend an action as well as to bring it.

rights were violated, we must determine how the trial court may remedy this situation at a new hearing.

As stated in *Zimmerman*, some means must exist by which an individual may prosecute his claim while still incarcerated; otherwise, that individual would be denied the constitutional right to bring a civil action. *Id.* at 758. "A trial court should not be able to deprive a prisoner of his constitutional right to maintain a civil action by denying motions that the court can properly deny while concurrently ignoring the prisoner's requests for other methods that would allow the prisoner to prosecute from prison." *Id.* There is no reason to believe that Mark could not himself take part in this action through one of the alternative methods while he is incarcerated.[3] He has shown remarkable skill and clarity in drafting his motions and in writing his brief. Nonetheless, we reserve the decision as to how the new hearing should be conducted for the trial court. Upon remand, the trial court should determine what manner of hearing is most appropriate and feasible and whether Mark is entitled to counsel.

The judgment of the trial court is reversed and the cause remanded for new proceedings not inconsistent with this decision.

ROBB, J., and RATLIFF, Sr.J., concur.

---

**3.** The record is not clear in regard to Mark's expected release date from the Department of Correction. It is possible that he will no longer be incarcerated when a new hearing is held. Consequently, the question of how to appropriately conduct the hearing will be easier to answer.