**Michael SABO, Appellant–Respondent,**

v.

**Anne Marie SABO, Appellee–Petitioner.**

No. 49A02–0401–CV–10.

Court of Appeals of Indiana.

July 27, 2004.

Michael Sabo, Westville, IN, Appellant Pro Se.

Herbert L. Allison, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Michael Sabo ("Husband") appeals the trial court's judgment dissolving his marriage to Appellee–Petitioner Anne Marie Sabo ("Wife"). We affirm in part and reverse and remand in part.

### Issue

Husband raises two issues, which we consolidate and restate as whether the trial court erred by conducting the final hearing without allowing Husband the due process opportunity to defend himself either in person, by counsel, or telephonically, in violation of Article I, Section 12 of the Indiana Constitution.

### Facts and Procedural History

Husband and Wife were married on February 14, 1997. On March 12, 2001, Wife filed a petition for dissolution of marriage and, pursuant to Indiana Code Section 31–15–2–14, the trial court bifurcated the contested and uncontested issues. On October 7, 2002, the trial court conducted the first bifurcated hearing, at which Husband and Wife appeared in person and by counsel. The parties stipulated that Wife would receive sole legal and physical custody of the couple's three children and that Husband would have no contact with the children. Wife was the sole testifying witness at the first hearing and, at the conclusion of her testimony, the trial judge informed the parties that "[w]e're going to have to break now. I'm sorry. I've got parties waiting." Tr. at 104. The trial court then scheduled the second hearing to take place either on June 18, 2003 or July 23, 2003.

Subsequent to the first hearing, Husband, who had pleaded guilty to two counts of child molesting involving two of the couple's children, was sentenced to eight

years in the Indiana Department of Correction. While incarcerated at the Westville Correctional Facility, Husband filed a motion for transport, which the trial court denied. On May 27, 2003, Husband, by counsel, filed a motion to appear telephonically at the final hearing, which the trial court granted. In particular, the trial court's order permitted Husband to participate in the final hearing via telephone, provided that "[Husband's] counsel, ROBERT J. OVERTON [ ("Overton") ], . . . arrange with the Westville Correctional Facility for said telephone participation." Appellant's App. at 306.

On May 30, 2003, Overton sent Husband a letter disclosing his intent to withdraw as Husband's counsel ("Withdrawal Letter"), which provided in relevant part, as follows:

[Husband,] due to (1) your inability to pay attorney fees, and (2) the fact that you have chosen to file motions on your own behalf, I am faced with the need to withdraw my Appearance on your behalf. Please be advised that I will file with the [trial court] my motion to withdraw appearance within ten (10) days of this letter. . . . I have enclosed a copy of a Court Order For Respondent To Participate In Hearing Via Telephone. I am sending a copy to the Westville Correctional Facility with whom I spoke on this issue; *they will arrange for the telephone call to the [trial court] which will be placed on speaker-phone in the Court.*

*Id.* at 314 (emphasis added).

On June 11, 2003, while still represented by Overton, Husband, *pro se*, filed a motion for appointment of counsel pursuant to Indiana Code Section 35–33–7–6, coupled with an affidavit of indigency. However, Husband's motion did not inform the trial court that Overton intended to withdraw as counsel. On June 12, 2003, without conducting a hearing, the trial court

denied Husband's motion for appointment of counsel. On June 16, 2003, Overton filed his motion to withdraw, to which he attached the Withdrawal Letter as Exhibit B. On June 17, 2003, the trial court granted Overton's motion to withdraw as Husband's counsel.

The following day, on June 18, 2003, the trial court conducted the final hearing as previously scheduled. However, Husband did not appear telephonically for this hearing. Indeed, the trial court observed that:

This matter has been continued several times in order to either [sic] have [Husband] transported, which could not occur. It was not done and the Courts do not transport prisoners for civil hearings. And then [Overton] was to schedule a telephonic conference with [Husband] to appear by telephone. However, [Overton] has since withdrawn and that telephonic conference was not set up with the Department of Corrections [sic]. Therefore, because this is a civil matter, the Court is going to go ahead and complete hearing of the evidence today without the presence of [Husband.] I would also show that [Overton] withdrew for two reasons. Because of [sic] his client was unable to pay his fees and that his client had filed motions on his own behalf.

Tr. at 109. On July 23, 2003, the trial court entered its "Judgment of Dissolution of Marriage–Decree—Part Two," wherein the trial court awarded Wife a money judgment against Husband for $5,640.95, i.e., the amount that he had appropriated from Wife and his daughter's trust fund. The trial court also ordered Husband to pay for Wife's legal expenses in the amount of $750.00 and attorney fees in the sum of $275.00. On August 18, 2003, Husband filed a timely motion to correct error, which the trial court denied. Husband now appeals.

### Discussion and Decision

■ On appeal, Husband argues that the trial court erred by conducting the final hearing without allowing him the due process opportunity to defend himself either in person, by counsel, or telephonically, in violation of Article I, Section 12 of the Indiana Constitution. Article I, Section 12 of the Indiana Constitution provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Accordingly, a prisoner clearly has a constitutional right to bring a civil action against persons who have injured him or her. *See id.* Conversely, an incarcerated defendant has the due process right to defend himself or herself in a civil action. *See, e.g., Murfitt v. Murfitt,* 809 N.E.2d 332, 334 (Ind.Ct. App.2004).

■■ Implicit in this right to bring or defend against a civil action is the right to present one's claim to the trial court. *Zimmerman v. Hanks,* 766 N.E.2d 752, 757 (Ind.Ct.App.2002). Here, Husband contends that the trial court erred by holding the final hearing with him in absentia without affording him the opportunity to defend himself in person, by counsel, or telephonically. In addressing this contention, we observe that a prisoner who is involved in a civil lawsuit has no right to a transport order. *Id.* Indeed, our courts have held that a trial court cannot secure the attendance of an incarcerated plaintiff at a civil action unrelated to the case resulting in incarceration. *Hill v. Duckworth,* 679 N.E.2d 938, 939 (Ind.Ct.App. 1997) (citing *Rogers v. Youngblood,* 226 Ind. 165, 170, 78 N.E.2d 663, 665 (1948)). In *Hill,* we recognized that:

It may seem harsh to petitioner that he is denied the right to prosecute his action for the possession of his property alleged to have been taken by the sheriff, but that is not done. He still has the right to sue. It is true that his confinement makes it impossible for him to appear in court and act as his own lawyer, but when anyone commits a felony and is convicted and is confined in State prison his ability to pursue his business in person and to exercise many other rights and privileges, which he otherwise might have had, are curtailed and in such curtailment his rights under the constitution are not violated. It is merely an incident of punishment.

*Hill,* 679 N.E.2d at 940.

■ In addition, a prisoner has no absolute right to counsel. *See Sholes v. Sholes,* 760 N.E.2d 156, 166 (Ind.2001). Rather, to establish whether to appoint counsel under Indiana Code Section 34–10–1–2, the trial court must determine whether the prisoner is indigent and without "sufficient means" to prosecute his or her action. *See id.* at 160. The trial court must further determine whether the prisoner has a colorable bona fide dispute over issues warranting the expense of counsel. *See id.* at 166.

■ However, some means must exist by which a plaintiff or defendant can prosecute or defend his or her civil claim while still incarcerated, lest he or she be denied the constitutional right to bring a civil action or the due process right to defend against an action. *See, e.g., Murfitt,* 809 N.E.2d at 334. A trial court should not be able to deprive a prisoner of his or her constitutional right to maintain or defend against a civil action by denying motions that the trial court can properly deny while concurrently ignoring the prisoner's requests for other methods that would allow the prisoner to prosecute or defend

from prison. *See, e.g., Zimmerman,* 766 N.E.2d at 756.

With this law as our guide, we now address Husband's argument that the trial court erred by either denying his request for appointment of counsel or, in the alternative, failing to allow him to appear at the final hearing telephonically. First, we will examine the propriety of the trial court's denial of Husband's motion for appointment of counsel. Second, we will address the trial court's failure to allow Husband to appear at the final hearing telephonically.

### I. Appointment of counsel

Husband first contends that the trial court erred by denying his motion for appointment of counsel without making a determination that he had sufficient means to defend himself in the civil litigation. At the outset, we note that, in his motion for appointment of counsel, Husband cited Indiana Code Section 35–33–7–6, which provides, in relevant part, that: "(a) Prior to the completion of the *initial hearing,* the judicial officer shall determine whether a person who requests assigned counsel is indigent. If the person is found to be indigent, the judicial officer shall assign counsel to him." (Emphasis added). This statute applies to criminal, not civil, proceedings and, as such, is inapplicable to the present controversy. Nevertheless, because Husband filed a motion for appointment of counsel, accompanied with an affidavit of indigency, we will examine the trial court's denial of the motion pursuant to Indiana Code Section 34–10–1–1.[1]

■ Indiana Code Section 34–10–1–1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Indiana Code Section 34–10–1–2, provides, in pertinent part, that:

> If the court is satisfied that a person who makes an application described in [Indiana Code Section 34–10–1–1] does not have sufficient means to prosecute or defend the action, the court shall:
>
> (1) admit the applicant to prosecute or defend as an indigent person; and
>
> (2) assign an attorney to defend or prosecute the cause.

Our supreme court has set out a procedure for appointing civil counsel under Indiana Code Section 34–10–1–2. *See Sholes,* 760 N.E.2d at 160. First, to invoke the statute, the litigant must apply to the trial court for leave to proceed as an indigent person. *Id.* When confronted with such a motion, the trial court should determine whether the applicant is indigent and is without sufficient means to litigate the action. *Id.* An affirmative finding on both inquiries would result in a statutory mandate that counsel be appointed. *Id.* at 166.

■ However, as the *Sholes* court cautiously warned, for purposes of Indiana Code Section 34–10–1–2, the considerations of indigence and sufficient means are quite different. *Id.* at 161. To determine whether an applicant is indigent, for example, the trial court must balance the applicant's assets against his or her liabilities and consider the amount of the applicant's disposable income or other resources reasonably available to him or her after the payment of fixed or certain obligations. *Id.* By contrast, the determina-

---

1. We further recognize that, in her appellee's brief, Wife does not contend that Husband waived this issue by citing an inapplicable statute. Rather, Wife merely asserts that the trial court properly denied Husband's request because Husband failed to argue that the present controversy presented complex issues, which require the aid of counsel.

tion of whether an "applicant has 'sufficient means' goes beyond a mere snapshot of the applicant's financial status. Rather, the [trial] court must examine the applicant's status in relation to the type of action before it." *Id.* Thus, if the action is of the type that is often handled by persons who are not indigent without the presence or assistance of counsel, the trial court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. *Id.* at 161. However, there is not a "blanket [category] of cases in which counsel should never be appointed. Rather, the [trial] court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel." *Id.*

 If the trial court establishes that the applicant is indigent and is without sufficient means to prosecute or defend the action, its inquiry regarding whether to appoint counsel is not over. Rather, because trial courts have only a statutory directive to appoint counsel to indigent litigants in civil cases, the trial court must further determine "whether [the applicant] has a colorable bona fide dispute over issues warranting the expense of counsel." *Id.* at 166. Indeed, in recognizing the conflict between the express directive of Indiana Code Section 34–10–1–2 to appoint counsel for all civil indigent litigants and the rights of attorneys to be compensated for rendering their legal services, our supreme court noted:

[T]he Indiana Constitution requires that appointed counsel be compensated. However, in the absence of any legislatively prescribed source of funding, a

[trial] court's ability to direct that counsel be appointed is circumscribed by the doctrines surrounding the [trial] court's ability to order the expenditure of public funds. Ultimately, then, the decision to appoint counsel for an indigent litigant in a civil case turns on the [trial] court's assessment of the nature of the case, the genuineness of the issues, and other factors that bear on the wisdom of mandating public funds for that purpose.

*Id.* at 159. Thus, even if the trial court determines that the applicant meets the requirements of Indiana Code Section 34–10–1–2 and should, consequently, receive an appointment of counsel, if no pro bono service provider is available to represent the applicant, "the trial court [has] to consider whether it has the power, under Ind. Trial Rule 60.5,[2] to order payment of counsel, or whether the statutory mandate of [Indiana Code Section 34–10–1–2] fails in light of overriding considerations that would prevent expenditure of public funds for appointed counsel." *Id.* at 166; *see also Zimmerman,* 766 N.E.2d at 755.

 Armed with these procedures that a trial court should apply when appointing civil counsel under Indiana Code Section 34–10–1–2, we now review the trial court's decision in this case. Here, the parties do not dispute that the trial court failed to make the determination of whether Husband is indigent and without sufficient means to defend the action. Even still, the record is clear that, when Husband filed his motion for appointment of counsel on June 11, 2003, he was already represented by counsel, i.e., Overton, and neither Husband nor Overton had given the trial court any indication that present

---

2. Ind. Trial Rule 60.5(A) provides that: "Courts shall limit their requests for funds to those which are reasonably necessary for the operation of the court or court-related functions. Mandate will not lie for extravagant, arbitrary or unwarranted expenditures nor for personal expenditures (e.g., personal telephone bills, bar association memberships, disciplinary fees)."

counsel intended to withdraw. Indeed, such representation did not terminate until the trial court granted Overton's motion to withdraw on June 17, 2003. Thus, when the trial court summarily denied Husband's motion for appointment of counsel on June 12, 2003, without making the required determinations, Overton was still serving as Husband's legal counsel and was, thus, still contractually obligated to render legal services on Husband's behalf. Under these circumstances, the trial court was not required to appoint counsel to act on Husband's behalf.[3] As such, the trial court did not err by summarily denying Husband's motion for appointment of counsel.

Moreover, our review of the record indicates that, although Sabo was indigent, the issues involved in the civil matter were not so complicated as to require the assistance of counsel. Rather, these types of dissolution proceedings are often handled by non-indigent persons without the assistance of counsel. Accordingly, we are not convinced that, without the aid of counsel, Sabo lacked sufficient means to prosecute his action.

## II. Right to Appear Telephonically

■■■■■ Having concluded that the trial court properly denied Husband's motion for appointment of counsel, we now address whether the trial court erred by holding the final hearing with Husband in absentia without allowing Husband to appear telephonically. As previously mentioned, a trial court that denies an incarcerated defendant's requests for transport order and appointment of counsel must provide the defendant some means by which to defend his or her civil claim. *See Murfitt*, 809 N.E.2d at 334.

In the present case, the evidence demonstrates that, while incarcerated at the Westville Correctional Facility, Husband filed a motion for transport from the prison to the courthouse, which the trial court denied. Husband then filed a motion to appear at the final hearing telephonically, which the trial court granted provided that Overton "arrange with the Westville Correctional Facility for said telephone participation." Appellant's App. at 306. Prior to the final hearing, Overton successfully withdrew as Husband's counsel. In so doing, Overton advised Husband that the Westville Correctional Facility would arrange the telephonic conference in question, and attached this letter to his motion to withdraw. However, on the day of the final hearing, Husband did not appear by telephone and, thus, the trial court conducted the hearing with Husband in absentia. Indeed, the trial court acknowledged that:

> And then [Overton] was to schedule a telephonic conference with [Husband] to appear by telephone. *However, [Overton] has since withdrawn and that telephonic conference was not set up with the Department of Corrections [sic].* Therefore, because this is a civil matter, the Court is going to go ahead and

---

**3.** We note that Overton sent Husband the Withdrawal Letter on May 30, 2003. This letter informed Husband, in no uncertain terms, that, "within ten (10) days of this letter," Overton was going to file with the trial court a motion to withdraw his appearance as Husband's counsel. Appellant's App. at 314. More than ten days later, on June 11, 2003, Husband—apparently believing that he was no longer represented by Overton—filed his motion for appointment of counsel, which the trial court promptly denied. Had Husband refiled his motion for appointment of counsel after Overton had withdrawn, the trial court would have been required to make the determinations of whether Husband is indigent and without sufficient means to defend his action pursuant to Indiana Code Section 34–10–1–2.

complete hearing of the evidence today without the presence of [Husband.]

Tr. at 109 (emphasis added). This acknowledgement demonstrates that the trial court knew that Overton—i.e., the one responsible for setting up the telephonic conference—had withdrawn and that the Westville Correctional Facility did not set up the conference. As such, Husband—through no fault of his own—was denied his right to defend himself in the final dissolution hearing in person, by counsel, or telephonically. Accordingly, the trial court erred by conducting the civil hearing with Husband in absentia, without providing Husband a means by which to defend himself in the civil action. *See, e.g., Murfitt*, 809 N.E.2d at 334 (holding that the incarcerated defendant was not afforded the opportunity to protect his own interests in the divorce proceedings because he was unable to present his claim of defense in person, telephonically, by counsel, or through documentary evidence).

For the foregoing reasons, we affirm the trial court's denial of Husband's motion for appointment of counsel without making the requisite determinations, but reverse the trial court's order because the trial court conducted the final hearing without allowing Husband a means to defend himself. We remand to the trial court for proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

BAKER, J., and FRIEDLANDER, J., concur.