**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2012, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DENNIS MIKEL**
Bunker Hill, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DENNIS MIKEL,                              )
                                          )
    Appellant-Plaintiff,              )
                                          )
       vs.                         )    No. 52A04-1111-SC-598
                                          )
STATE OF INDIANA,                          )
                                          )
    Appellee-Defendant.               )

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable J. David Grund, Judge
Cause No. 52D01-1105-SC-512

**April 18, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Dennis Mikel appeals the trial court's judgment in favor of the Miami Correctional Facility ("the Facility") and Mark Sevier, Superintendent of the Facility (collectively, "the Defendants"). We affirm in part, reverse in part, and remand.

## Issues

The issues before us are:

I. whether the trial court erred in not conducting a jury trial in this matter;

II. whether the trial court properly denied Mikel's motion for appointment of counsel; and

III. whether the trial court properly entered judgment in favor of the Defendants.

## Facts

On April 7, 2010, during a "shake down" at the Facility, corrections officers entered Mikel's cell and confiscated a number of items, including books, magazines, a radio, some medications, and a TV. The reason given for the confiscation was that the number of items Mikel possessed exceeded the maximum allowed and also that the TV and radio had been altered in violation of Facility rules. According to Department of Correction ("DOC") rules, property confiscated from an inmate must be disposed of in one of four ways, at the inmate's discretion: it may be given to a charity, retained for use by the DOC at the DOC's discretion, mailed to an outside party, or destroyed. Additionally, an inmate may wish to file a grievance regarding the confiscated property.

If an inmate does not choose a disposition for the property <u>and</u> if the inmate does not indicate that he or she wishes to file a grievance, "the prohibited item(s) will be destroyed 60 days from the date of the withholding of the item(s)."[1] Appellant's App. p. 18. On the date his property was confiscated, Mikel filled out a DOC form indicating that he intended to file a grievance. Mikel did not indicate how he would want the property to be disposed of.

On May 3, 2010, Mikel filed a grievance with the Facility regarding the confiscation of his property. This first grievance was not reviewed because Mikel allegedly had failed to try to resolve his concerns informally. After meeting this requirement, Mikel filed a second grievance on May 24, 2010. On June 3, 2010, a Facility employee, Clair Barnes, responded to Mikel, "Your TV will be returned to you, and the medication will be returned back to the medical department." <u>Id.</u> at 25. Barnes denied Mikel's grievance with respect to the rest of his property.

On June 16, 2010, Mikel wrote a letter indicating that he wished to appeal the denial of his grievance. In a letter dated June 18, 2010, Barnes wrote to Mikel, stating in part:

> Your television initially appeared that it could be returned to you. After further review by the Property Officer, it was determined that your TV is altered. It will not be returned to you. I apologize for the misinformation I gave you in the grievance response. You must select a disposition for the

---

[1] The Defendants assert in their brief that if an inmate does not choose a disposition for confiscated property within sixty days of seizure, the property is to be destroyed, but it fails to mention that this time limit does not apply if an inmate chooses to file a grievance. If an inmate chooses to do so, any confiscated items "will be held until the grievance is decided." Appellant's App. p. 18.

> television within sixty days from the date of confiscation, or the property will be destroyed. . . . I have scanned this letter into the grievance. An appeal form was sent to you on June 10, 2010. You may address your television in your appeal, if you choose to submit it.

Id. at 59. Also on June 18, 2010, Mikel formally filed an appeal of the denial of his grievance. The appeal does not mention the TV; it is unclear from the record whether Mikel received Barnes's letter regarding the TV before or after he filed his appeal.

On July 22, 2010, another Facility official denied Mikel's grievance appeal in a written document.[2] The document contains the original language from the June 3, 2010 response to Mikel's grievance, including the language that "[y]our TV will be returned to you," and then states that the reviewing official concurred with that determination. Id. at 28.

As the next level of administrative review of Mikel's grievance, he filed a complaint with the DOC's Ombudsman Bureau. While that complaint was under consideration, on August 2, 2010, a Facility employee sent Mikel a letter informing him that he still had confiscated property in storage, that the sixty-day time limit for directing disposition of the property had passed, that Mikel had "either failed to file a grievance or you have exhausted your grievance remedies," and that he now had five days to decide how he wanted to dispose of the property. Id. at 29. Mikel did not give any directions on how he wanted his property disposed of, nor did the letter specify what property was being held subject to disposal. On August 13, 2010, the director of the Ombudsman

---

[2] It is unclear which official reviewed Mikel's appeal. The document denying the appeal appears to be signed by an Amanda Hobbs, but states that the appeal was denied by "L.A. VanNatta."

4

Bureau wrote to Mikel that "[t]he grievance response you received in reference to this matter properly addresses the issue. You were told your TV will be returned to you. . . . Accordingly, I find no violation of DOC policy or procedure in regard to this matter." Id. at 30.

On August 25, 2010, the Facility's property officer destroyed all of Mikel's confiscated property, including the TV. Mikel then timely filed a notice of tort claim for the loss of his property with the Attorney General's office. On January 10, 2011, the Attorney General's office informed Mikel that it saw no basis for his tort claim and would not offer a settlement to him.

On May 9, 2011, Mikel filed a complaint against the Defendants in the small claims docket of the Miami Superior Court, seeking damages of $1500.[3] Before actually filing the action, Mikel had requested that the trial court appoint counsel to represent him. The trial court denied this request and also ordered that Mikel's case be decided by affidavit. After documentary evidentiary submissions by Mikel and the Facility, the trial court entered judgment in favor of the Facility on October 7, 2011. Mikel now appeals.

## Analysis

### I. Jury Trial

First, Mikel contends that the trial court deprived him of his constitutional right to a jury trial when it ordered that the case be decided on the basis of submitted documentary evidence and affidavits. As the State points out, however, "The filing of a

---

[3] Mikel later reduced the amount of damages he was seeking to $500.

claim on the small claims docket is considered a waiver of trial by jury." Ind. Code § 33-29-2-7(a). Mikel expressly filed his action on the small claims docket of the Miami Superior Court. We see no reason why the statutory waiver of trial by jury would not apply here, and Mikel provides no argument as to why it would not apply. Additionally, we previously have held that submission of a case by documentary evidence is an appropriate method of trying a small claims case filed by an incarcerated plaintiff who is unrepresented by counsel. See Zimmerman v. Hanks, 766 N.E.2d 752, 758 (Ind. Ct. App. 2002). The trial court did not err in not conducting a jury trial on Mikel's small claims complaint.

## II. Appointment of Counsel

Next, Mikel argues the trial court erred in denying his motion for the appointment of counsel. Indiana Code Section 34-10-1-1 provides, "An indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Indiana Code Section 34-10-1-2 provides in part:

> (b) If the court is satisfied that a person who makes an application described in section 1 of this chapter does not have sufficient means to prosecute or defend the action, the court:
>
> > (1) shall admit the applicant to prosecute or defend as an indigent person; and
> >
> > (2) may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.

6

(c)     The factors that a court may consider under subsection (b)(2) include the following:

> (1)     The likelihood of the applicant prevailing on the merits of the applicant's claim or defense.
>
> (2)     The applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.

(d)     The court shall deny an application made under section 1 of this chapter if the court determines any of the following:

> (1)     The applicant failed to make a diligent effort to obtain an attorney before filing the application.
>
> (2)     The applicant is unlikely to prevail on the applicant's claim or defense.

Prior to 2002, the statute governing the appointment of counsel in civil cases simply provided that if an applicant was indigent and lacked "sufficient means to prosecute or defend the action, the court shall . . . assign an attorney to defend or prosecute the cause." I.C. § 34-10-1-2 (2001). The statute did not limit the appointment of counsel in civil cases to "extraordinary circumstances," nor did it require the applicant to "make a diligent effort to obtain an attorney before filing the application." Still, cases interpreting the prior version of the statute permitted trial courts to deny the appointment of counsel, even where an applicant clearly was indigent, if "the action is of the type that is often handled by persons who are not indigent without the presence or assistance of counsel . . . ." Sabo v. Sabo, 812 N.E.2d 238, 244 (Ind. Ct. App. 2004). The 2002

7

amendments to Section 34-10-1-2 effectively codified the case law limitation on the appointment of counsel in civil cases.

Here, Mikel made no showing that he made any effort to obtain the services of an attorney before he filed his motion for appointment of counsel. This by itself is sufficient to support the trial court's denial of his request under subsection (d)(1) of the statute. See Smith v. Harris, 861 N.E.2d 384, 386 (Ind. Ct. App. 2007), trans. denied. Moreover, small claims actions such as the one filed by Mikel often are litigated pro se. Mikel also has demonstrated throughout the grievance process that he is able to adequately represent himself in this type of matter. This provides additional justification for the denial of his request for the appointment of counsel at public expense. See Sabo, 812 N.E.2d at 245. The trial court did not err on this issue.[4]

### III. *Judgment for Defendants*

Finally, we address Mikel's claim on the merits that the trial court erred in entering judgment in favor of the Defendants. "Judgments in small claims actions are 'subject to review as prescribed by relevant Indiana rules and statutes.'" Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1067-68 (Ind. 2006) (quoting Ind. Small Claims Rule 11(A)). Thus, a clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. Id. "But this deferential standard does not apply to the

---

[4] In his brief, Mikel refers extensively to Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963) and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Those cases concern the appointment of counsel in criminal cases and the standard for judging the effectiveness of attorneys in criminal cases. They have no application to this civil case.

substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." Id. "Similarly, where a small claims case turns solely on documentary evidence, we review de novo, just as we review summary judgment rulings and other 'paper records.'" Id. Because this case was decided solely on the basis of written evidentiary submissions, our review of this matter is de novo.

We also observe that Mikel complied with the requirements of Indiana Code Section 34-13-3-7 in first filing an administrative claim for the loss of his property with the DOC before filing this lawsuit. If such a claim is denied, as it was here, then an inmate is entitled to file a small claims suit for the loss of the property, pursuant to the Indiana Tort Claims Act. See Smith v. Indiana Dep't of Corrections, 888 N.E.2d 804, 808 (Ind. Ct. App. 2008). Such a suit usually cannot seek damages from a State employee in their individual capacity, unless certain matters are alleged that Mikel did not allege here against Sevier. See id.[5] However, Mikel's complaint also named the Facility as a defendant, which was proper, and the complaint can be easily read as naming Sevier as a defendant in his official, not individual, capacity, which also was proper. See Banks v. Brown, 876 N.E.2d 335, 336 (Ind. Ct. App. 2007).

On appeal, Mikel focuses on the Facility's destruction of his TV; we likewise will focus solely upon that issue. The Defendants assert that under Indiana Code Sections 11-11-2-2 and 11-11-2-5, DOC facilities have the discretion to limit the amount and types of

---

[5] In order to recover against a State employee individually, a complaint must allege an act or omission by the employee that is "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." I.C. § 34-13-3-5(c).

personal property an offender may keep in his or her cell. The Facility specifically prohibits inmate possession of "altered" property. Appellee's App. p. 1. Emphasizing Barnes's June 18, 2010 letter stating that the TV had been altered and would not be returned to Mikel, coupled with his failure to direct a disposition for the TV, the Defendants assert that the Facility was entitled to destroy the TV, per DOC and Facility rules.

This argument, however, ignores the full context of the facts. Mikel suggested in his affidavit to the trial court that Barnes's June 18, 2010 letter was a forgery, even going so far as to say that "you do not have to see the polecat to smell it." Appellant's App. p. 63. We need not definitively resolve that question. It is enough to say that in two official pieces of correspondence following the June 18, 2010 letter, Mikel was advised that his TV would be returned to him.

First, in the July 22, 2010 resolution of his grievance appeal within the Facility, the documentation recites the language of the original grievance decision, including that Mikel's TV would be returned to him, and then states that the employee deciding the appeal agreed with that resolution. Mikel did not raise the issue of the loss of his TV in the grievance appeal. As noted, it is unclear from the record whether Mikel was aware of Barnes's June 18, 2010 letter when he filed his grievance appeal. However, given the lengths to which Mikel has litigated the confiscation of his property and the destruction of his TV, we believe it is safe to presume that if he had received Barnes's letter before he filed his grievance appeal, he would have addressed the TV in that appeal.

Additionally, although Barnes's letter stated that it would be "scanned" into his grievance file, its conclusion that Mikel's TV would not be returned to him was not included in the July 22, 2010 denial of his grievance appeal.

Second, after the grievance appeal was decided against him, which was the final level of review available to him within the Facility, he filed his complaint with the DOC Ombudsman. In its response to his complaint on August 13, 2010, the Ombudsman clearly indicated its understanding that Mikel's TV would be returned to him. In other words, the final level of administrative review within the DOC indicated that Mikel's TV would be returned to him. Yet, less than two weeks after the Ombudsman made this statement, the Facility destroyed the TV.

Additionally, although the Facility had advised Mikel in writing on August 2, 2010, that he had property in the storage room for which he needed to designate a disposition or it would be destroyed, the letter did not list the property at issue. At that time, Mikel reasonably was entitled to rely on the most recent communication from the facility, the July 22, 2010 grievance appeal determination, which stated that his TV would be returned to him, i.e., it would not be destroyed.

We note that Mikel does not directly argue that the TV, in fact, was not altered in violation of Facility and DOC rules. We believe that is beside the point. Mikel was repeatedly told that the TV would be returned to him. Therefore, he had no reason to litigate whether the TV had been altered during the grievance process. Additionally, even if the TV had been altered, Mikel could have opted to have it mailed to an outside

11

party; its immediate destruction was not warranted merely because it was altered. Although the Defendants fault Mikel for not timely choosing a disposition for the TV, he reasonably could have believed he did not need to do so, based first on the resolution of his grievance appeal and subsequently the DOC Ombudsman's response to his complaint.

In sum, we conclude Mikel has established that he is entitled to compensation for the destruction of his TV. The record before us does not contain clear evidence as to the amount of damages Mikel would be entitled to for this loss of property. Although Mikel's complaint originally sought $1500 in damages, later reduced to $500, the trial court is not bound to award either amount. Thus, we reverse the judgment in favor of the Defendants and remand for further proceedings on the amount of damages to which Mikel is entitled.

### Conclusion

Although the trial court did not err either in denying Mikel's request for appointed counsel or in not conducting a jury trial on his complaint, we conclude on the basis of de novo review that it erred in entering judgment in favor of the Defendants. We reverse and remand for an assessment of damages.

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., and BRADFORD, J., concur.