**FILED**

Aug 19 2016, 8:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Perry Cruse, | August 19, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 41A01-1512-PO-2345 |
| v. | Appeal from the Johnson Circuit Court |
| C.C., | The Honorable K. Mark Loyd, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 41C01-1506-PO-331 |

**Baker, Judge.**

[1] Joshua Cruse appeals the protective order entered by the trial court preventing him from having contact with his ex-wife, C.C., except to communicate regarding their children. Cruse argues there is insufficient evidence supporting the protective order. We agree, and reverse.

[2] In June 2015, Cruse and C.C. were divorced. They have three children together. After several incidents involving verbal disagreements between the parents in front of or near the children, C.C. filed a petition for a protective order on June 18, 2015. She did not seek to prevent Cruse from having contact with the children, seeking only to limit the contact he was permitted to have with her. The trial court granted an ex parte protective order the same day. Following a November 24, 2015, hearing, the trial court reaffirmed the protective order, which prohibited Cruse from communicating with C.C. except on parenting time issues. Any communication regarding parenting time was ordered to be done in writing or through their parenting coordinator. Cruse now appeals.

[3] Initially, we note that C.C. has not filed an appellee's brief. We need not develop an argument on her behalf, and may reverse if Cruse is able to establish prima facie error—error on the face of the order being appealed. *Evans v. Thomas*, 976 N.E.2d 125, 126 (Ind. Ct. App. 2012).

[4] A person who has been a victim of "domestic or family violence" may file a petition for a protective order. Ind. Code § 34-26-5-2. "Domestic or family violence" is defined as follows:

the occurrence of at least one (1) of the following acts committed by a family or household member:

(1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.

(2) Placing a family or household member in fear of physical harm.

(3) Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.

(4) Beating (as described in IC 35-46-3-0.5(2)), torturing (as described in IC 35-46-3-0.5(5)), mutilating (as described in IC 35-46-3-0.5(3)), or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

For purposes of IC 34-26-5, domestic and family violence also includes stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4, whether or not the stalking or sex offense is committed by a family or household member.

Ind. Code § 34-6-2-34.5. "Stalk" means "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment" means "conduct directed toward a victim that includes but is not limited to repeated or

continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2.

In this case, C.C. testified as follows regarding her petition for a protective order:

- Cruse attended their son's kindergarten graduation and told C.C. "he would make a scene right there in front of everyone." Tr. p. 8. He followed C.C. "out into the parking lot telling the kids that . . . I was keeping them from him." *Id.* at 9. As a result, C.C. felt "intimidated." *Id.*
- Another time, Cruse went to the school where C.C. works and the children go to school and "pulled [C.C.] out of my class room and said that he needed to talk to me then and there and made my boss feel uncomfortable with him being in there." *Id.*
- More than once, he went to the school to have lunch with the children and stayed "for an extended amount of time" with the children after school employees asked him to leave. *Id.* He made "the kids' teachers uncomfortable as well." *Id.*
- On one occasion, Cruse attended their son's baseball game. C.C. was there with a male colleague. C.C. overheard Cruse tell his uncle that she and the colleague "were probably banging[.]" *Id.* at 10. After the game, Cruse "[g]ot up in this gentleman's face and told him that he better not come around our kids again and [the colleague] felt threatened enough that he left." *Id.*
- In general, when Cruse "comes to events with the kids he tends to want to take them away from me, even whenever I tell him not to. And that is why I would prefer that he doesn't come around . . . I don't feel that him taking them at a sporting event away from me and he won't listen to me, is appropriate." *Id.*

There is no evidence that Cruse attempted to, threatened to, or did cause any acts of physical harm. There is no evidence that he placed C.C. in fear of physical harm.

[6] The dissent places great emphasis on the fact that Cruse was "holding a baseball bat" during the incident that occurred after the baseball game. Dissent para. 5. Indeed, the dissent states that, our "rationale insulates perpetrators of domestic violence from protective orders so long as those perpetrators are mindful to expressly threaten only friends or associates of former partners while in the presence of their former partners even while in the presence of their former partners or even while holding a potential weapon." *Id.* at para. 10. We believe that this interpretation of our analysis goes several steps too far.

[7] When C.C. testified, she did not even mention the fact that Cruse was holding a baseball bat during this incident. Tr. p. 9-10. Instead, the *only* evidence she presented regarding this incident was that Cruse mentioned that C.C. and her companion "were probably banging" and that Cruse then "got up in this gentleman's face and told him that he better not come around our kids again and he felt threatened enough that he left." *Id.* at 10. Cruse's testimony is the *only* evidence in the record regarding the bat during this incident. And he testified that, after his son's game, he retrieved his son's bat, which Cruse had purchased for him as a birthday present, so that they could later play baseball together. *Id.* at 16. Cruse acknowledged that he was carrying the bat when he argued with C.C. and her companion, but denied that he carried it in a threatening way, testifying that he "had it down by my knee the whole time. I

never, ever moved it." *Id.* at 17. Eventually, C.C. took the bat from him and looked like she was angry. *Id.* As the only evidence in the record regarding the bat establishes that Cruse was holding it in a non-threatening manner, and C.C. did not even mention the bat, we strongly disagree with the dissent that this suffices to establish that Cruse attempted or threatened to cause physical harm to anyone. We certainly do not believe that this holding in any way "insulates perpetrators of domestic violence."

[8] The only possible basis for the protective order that remains, therefore, is a conclusion that Cruse's actions constituted stalking. We find insufficient evidence that C.C. was actually terrorized, frightened, intimidated, or threatened. Although she did comment that at one point she felt intimidated, most of her concerns were based upon the way other people were reacting to Cruse. She was not frightened, she merely "preferred" that Cruse not be around when she was with the children. We also find insufficient evidence that Cruse's course of conduct would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened.

[9] The judgment of the trial court is reversed.


Vaidik, C.J., concurs.
Najam, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Perry Cruse<br>*Appellant-Defendant,*<br><br>v.<br><br>C.C.,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>41A01-1512-PO-2345 |

**Najam, Judge, dissenting.**

[10]   I respectfully dissent.  C.C. presented sufficient evidence to show that the Order of Protection was warranted because Cruse had placed C.C. in fear of physical harm and also had committed stalking.  In particular, the evidence and the reasonable inferences from the evidence show that Cruse engaged in threatening behavior directed at C.C. and repeatedly harassed C.C. such that she reasonably and actually felt intimidated by his conduct.  While the majority is correct that some of C.C.'s testimony referred to Cruse's conduct towards her

friends and colleagues, C.C. was present for each of the incidents, and a reasonable fact-finder could conclude that Cruse's conduct was directed at her.

[11] In determining the sufficiency of the evidence on appeal, we neither reweigh the evidence nor resolve questions of witness credibility. *A.S.*, 920 N.E.2d at 806. We look only to the evidence of probative value and reasonable inferences therefrom that support the trial court's judgment. *Id.* And, because C.C. did not file an appellee's brief, the prima facie error rule applies. *E.g.*, *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 755 (Ind. Ct. App. 2013).

[12] As noted by the majority, a protective order may be issued to protect a family or household member who has been placed in fear of physical harm by another family or household member. I.C. § 34-6-2-34.5. A protective order may also be issued to protect a person from stalking, which is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. And "harassment" means "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2.

[13]    In her verified petition, C.C. alleged that she was a victim of domestic violence and stalking. Appellant's App. at 5.[1] And C.C. described three incidents that, she alleged, supported the issuance of the Ex Parte Order.[2] At the hearing, both C.C. and Cruse testified regarding each of those three incidents, and C.C. testified about other reasons she had sought a protective order.

[14]    One of those incidents occurred at a baseball game, where Cruse threatened a male friend of C.C.'s while holding a baseball bat. The majority discounts the significance of Cruse's conduct during that incident on the ground that "the only evidence in the record regarding the bat establishes that Cruse was holding it in a non-threatening manner, and C.C. did not even mention the bat" in her testimony. Slip op. at 6. But a reasonable fact-finder could discredit Cruse's testimony and conclude from the totality of the evidence that Cruse had acted in a threatening manner when he verbally confronted and warned C.C.'s male friend while holding a bat.

[15]    During her testimony, C.C. stated that Cruse "[g]ot up in [her male friend's] face and told him that he better not come around our kids again," and that this caused her friend to "fe[el] threatened enough that he left." Tr. at 10. In response to that testimony, Cruse acknowledged that he was holding a bat

---

[1] In its Ex Parte Order of Protection, the trial court listed the children as protected persons.

[2] To be sure, the trial court did not admit the petition into evidence during the evidentiary hearing. It is mentioned here simply to place the testimony of the parties during that hearing concerning the three incidents in context.

when he "start[ed] to speak to the friend." *Id.* at 17. Cruse also acknowledged that his uncle "tr[ied] to take the bat" away from Cruse during the confrontation, and that C.C. eventually did "take it." *Id.*

[16] Thus, it is undisputed that Cruse confronted C.C.'s male friend. It is undisputed that Cruse held a baseball bat when he did so. And it is undisputed that Cruse's uncle attempted to, and then C.C. did, take the bat away from Cruse during that confrontation. The only dispute is the degree to which Cruse may have threatened the male friend. C.C. testified that Cruse did; Cruse testified that he did not. And one reasonable inference from the attempts to take the bat away from Cruse during the confrontation is that people felt threatened by Cruse's possession of the bat when coupled with Cruse's behavior. The trial court credited the evidence that demonstrated that Cruse had engaged in threatening behavior, as it was the court's prerogative to do.

[17] Moreover, that Cruse had behaved in a threatening manner towards C.C.'s friend while holding a bat is the only conclusion that considers the evidence most favorable to the trial court's judgment, whether under our prima facie error standard of review or otherwise. *See Maurer*, 994 N.E.2d at 755. Indeed, the majority's reliance on the prima facie error rule to support its holding is misplaced. The prima facie error rule does not speak to our independent review of the record. And that standard of review is not a license for this court to reweigh the evidence or judge the credibility of witnesses on appeal. *See, e.g.*, *Farmer v. Spradlin (In re B.N.C.)*, 822 N.E.2d 616, 619 (Ind. Ct. App. 2005) (citing *Slaton v. State*, 510 N.E.2d 1343, 1347 (Ind. 1987)).

[18] Rather, the prima facie error rule exists to relieve this court from "the burden of developing arguments for the appellee." *Murfitt v. Murfitt*, 809 N.E.2d 332, 333 (Ind. Ct. App. 2004). But I do not speculate as to what C.C.'s argument on appeal might have been. I have merely reviewed the record on appeal in the light most favorable to the trial court's judgment, as we must. *See A.S.*, 920 N.E.2d at 806. The prima facie error rule is not a rule that exists "to benefit the appellant," with whom the burden of persuasion on appeal remains in the face of a presumptively valid trial court judgment. *See State v. Moriarity*, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005).

[19] Again, the evidence most favorable to the trial court's judgment demonstrates that Cruse was holding a baseball bat while he threatened a man whom he accused to be C.C.'s sexual partner in C.C.'s presence and in the presence of the children. That evidence supports a reasonable inference that Cruse placed C.C., a family or household member, in fear of physical harm even though Cruse did not explicitly aim his conduct at C.C. *See* I.C. § 34-6-2-34.5(2). To hold to the contrary insulates perpetrators of domestic violence from protective orders so long as those perpetrators are mindful to expressly threaten only friends or associates of former partners even while in the presence of their former partners or even while holding a potential weapon. On the basis of this incident alone, the trial court's entry of the Protective Order should be affirmed. *See id.*

[20] The evidence also independently supports the trial court's judgment under Indiana Code Section 35-45-10-1 because a reasonable fact-finder could

conclude that Cruse stalked C.C. In addition to the incident at the baseball game, C.C. testified that Cruse came to C.C.'s place of employment and made her work colleagues feel "uncomfortable." Tr. at 8. C.C. was also present at the time when someone at C.C.'s workplace called the police to have Cruse removed from the school premises. In light of those facts at her workplace and the incident at the baseball game, a reasonable fact-finder could conclude that Cruse committed stalking when he repeatedly harassed C.C. from which she reasonably and actually felt threatened and suffered emotional distress. *See* I.C. § 35-45-10-1.

[21] We cannot judge the credibility of the witnesses from a cold record. Having heard the testimony and observed the demeanor of the witnesses, the trial court has concluded that Cruse's behavior is not merely unpleasant and unreasonable but that C.C. actually feels threatened by his behavior. While C.C. was not represented by counsel at trial, she made her case, and the trial court believed her. And, in this civil action, her burden of proof was by a preponderance of the evidence. *See A.S.*, 920 N.E.2d at 806.

[22] C.C. proved that Cruse deliberately initiated three aggressive encounters with her, and Cruse's conduct is symptomatic of controlling behavior, which is a form of domestic violence. Considering the evidence most favorable to the trial court's judgment, I would hold that the trial court did not commit reversible error when it concluded that C.C. had carried her burden of proof by a preponderance of the evidence and issued an Order of Protection for C.C. and her children.