## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 17 2020, 9:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Audrey Wilson
Dale, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re The Paternity of: E.E., Audrey L. Wilson, *Appellant-Respondent,* | August 17, 2020 |
| | Court of Appeals Case No. 19A-JP-3083 |
| v. | Appeal from the Spencer Circuit Court |
| Greg S. Elsperman, *Appellee-Petitioner,* | The Honorable Karen Werner, Magistrate |
| | Trial Court Cause No. 74C01-1811-JP-291 |

**Robb, Judge.**

# Case Summary and Issue

Audrey Wilson ("Mother") and Greg Elsperman ("Father") have one child together, E.E. ("Child"). After the parties ended their relationship, Father filed a petition to establish custody and parenting time. At the hearing on the matter, and over Mother's objection, Father's counsel elicited testimony from Mother regarding an abortion. Mother appeals pro se and raises one issue for our review, which we restate as whether the trial court abused its discretion in admitting into evidence the testimony about her abortion. Concluding any error in the admission of the testimony was harmless, we affirm.

# Facts and Procedural History[1]

Mother and Father met at a New Years' Eve party in 2013, began dating around May 2016, and began living together in the fall of that year. Mother described their relationship as "very unstable[.]" Transcript of Evidence, Volume 2 at 8. When the parties began living together, Mother had four children from two prior relationships and had physical custody of two of the children—one of whom has special needs. Father had three adult daughters, two from a previous marriage and one from another relationship. Child was

---

[1] Because Mother failed to file an appendix as required under Indiana Appellate Rule 49, we take our facts and procedural history from the transcript of proceedings before the trial court.

born to Mother and Father on August 24, 2017. During the relationship, Mother, a registered nurse, stayed home and cared for the children; Father worked at an automobile dealership.

[3]     The parties' relationship ended in October 2018, when Mother left Father's house, taking Child and her other children with her. Mother sought and obtained a protection order against Father. On November 5, 2018, Father filed in the Spencer Circuit Court a petition to establish custody and parenting time, specifically requesting joint physical and legal custody of Child. During this time, and pursuant to an agreed order,[2] Father paid $100 each week to Mother in support of Child. Father was permitted parenting time every Monday and Wednesday for three hours in the evening and then from 4:00 p.m. on Friday until 4:00 p.m. on Saturday.

[4]     The trial court conducted a hearing on Father's petition to establish custody and parenting time on July 18, 2019. The hearing was continued to, and concluded on, October 24, 2019. On the second day of the hearing, the trial court also heard evidence on Mother's petition for a protection order that was filed in October 2018, under a separate cause number.[3] On the first day of the

---

[2] It appears from testimony presented during the hearing that, at some point prior to the hearing, the parties entered into an agreed order. *See* Tr., Vol. 2 at 152.

[3] Although it is unclear, we glean from the record that an ex parte order for protection against Father was in place until the matter of whether to impose a permanent protection order could be heard at a hearing.

hearing, however, Father's counsel questioned Mother as follows regarding whether she had an abortion:

Q And who is Bryan Eckert?

A Bryan Eckert is a neighbor and a friend. He and I have actually recently started dating as of about two (2) weeks ago.

Q Okay, did you have a brief relationship with him that resulted in a pregnancy that you then aborted?

A Is that pertinent?

Q The question is, did you have a brief relationship with him that –

[MOTHER]: Do I need to answer?

THE COURT: Ma'am, please. Just let him finish and then answer the question.

[FATHER'S COUNSEL]: Yes, it's pertinent. I'd like for you to answer the question.

[MOTHER'S COUNSEL]: Let me – let me state an objection on the grounds of relevancy.

[FATHER'S COUNSEL]: It's relevant, Your Honor, to – to the fact that she has had a relationship in the past with him and it goes to somethings [sic] that have occurred since then so I believe it is relevant.

[MOTHER'S COUNSEL]: Having an abortion – whether somebody has an abortion or not is different than having a relationship with somebody.

THE COURT: [Counsel], do you want to rephrase?

[FATHER'S COUNSEL]: Well, Your Honor, she has represented in her interrogatory answers about certain medical conditions and she failed to mention that she had an abortion. I believe that's relevant to her truthfulness.

THE COURT: Overruled.

Q Did you have a relationship – a brief relationship with Bryan Eckert that resulted in a pregnancy that you terminated?

A I didn't know that that needed to be –

[MOTHER'S COUNSEL]: Same – same – let me –

A Yes.

[MOTHER'S COUNSEL]: Let me make my objection. Same objection. Terminating is the same thing as aborting.

THE COURT: Overruled.

* * *

A I did.

Q You did?

A Yes.

Q And when was that?

A That was in 2014.

Tr., Vol. 2 at 9-11.

On October 30, 2019, the trial court issued its order, finding in relevant part that it was in the best interest of Child for the parties to "share joint legal custody [of Child], with primary physical custody to be with Father[;]" and that Mother was "entitled to parenting time . . . according to the Indiana Parenting Time Guidelines[.]" Appealed Order at 1. As to child support, the trial court ordered "no child support to be paid by the Mother." *Id.* Mother now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

Mother contends that the trial court abused its discretion by allowing Father's counsel, over objection, to elicit testimony from Mother regarding her abortion. We first note that Father did not file an appellee's brief. We apply a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct.

App. 2006). We will not undertake the burden of developing the arguments for the appellee, and we may reverse if the appellant establishes prima facie error. *Id.* When the appellant fails to sustain that burden, we will affirm. *Murfitt v. Murfitt*, 809 N.E.2d 332, 333 (Ind. Ct. App. 2004).

[7] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re S.W.*, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). "[E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014) (internal quotations omitted). To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the finder of fact. *Id.*

## II. Admission of Testimony

[8] Mother argues that the trial court abused its discretion in admitting her testimony of her abortion over her objection because, according to Mother,

> there [was] nothing in the line of questioning immediately
> following the overruled objection to the admissibility of [the
> abortion testimony] that remotely relates to [Father's counsel's]
> rationale used in the representation made to the Court in

response to the objection or how the testimony of [Mother]'s abortion is relevant.

Brief of Appellant at 8. Mother further argues that the record "reveals no probative value to [her] testimony of her abortion" and that her testimony "does nothing but potentially invoke unfair prejudice." *Id.* Mother asserts that she "potentially" was "unable to receive an impartial hearing[.]" *Id.* at 10.

[9] Even if we accept Mother's argument that the testimony in question lacked relevance as to custody and parenting time for Child, we find that Mother cannot prevail. Other than bald assertions, Mother has failed to explain how her substantial rights were affected by the admission of the testimony. Thus, any error in the admission of the testimony is harmless. Also, there is no evidence in the record that the trial court relied upon the abortion testimony in making its determination regarding custody and parenting time for Child. Furthermore, the record reveals that Mother was provided a full and impartial two-day hearing on matters of custody, parenting time, and child support for Child.

[10] We note that while the abortion testimony that Mother challenges was presented in the opening moments of the first day of the hearing, the parties presented additional testimony regarding the abortion on the second day of the hearing—when Mother's counsel presented evidence on Mother's petition for the protection order against Father. The abortion matter was addressed through testimony of Mother and Father that was elicited by both parties'

counsel. Specifically, the testimony revealed that in February 2017, while Mother was pregnant with Child, Mother scheduled a doctor's appointment (that was unrelated to her pregnancy), and Father showed up at the appointment unannounced. Father testified on direct rebuttal examination, and without objection from Mother, that he showed up at the appointment because he was concerned that Mother "was going to go and get an abortion." Tr., Vol. 3 at 121. During cross-examination by Mother's counsel, counsel asked Father if his concern was "just something that came into your mind without any information from the outside world whatsoever[,]" and the following exchange took place:

> [FATHER:] I knew she had gotten an abortion from [her ex-boyfriend] . . . when she decided she didn't want to be in a relationship with him and I was afraid she'd do the same thing with me.
>
> [MOTHER'S COUNSEL:] She never gave you any indication she was considering an abortion?
>
> [FATHER:] Only by her previous actions.

Tr., Vol. 3 at 135-36. Mother's counsel then recalled Mother to the witness stand to ask her the following:

> [MOTHER'S COUNSEL:] [I]n regard to what [Father] said in regard to his testimony about [the] protective order. So, at any time did you ever give any indication to him that you were even considering an abortion of [Child]?

[MOTHER:] No, I did not.

*Id.* at 148.

[11] Testimony that was similar to the testimony presented on the first day of the hearing, was elicited without objection on the second day of the hearing. Mother's counsel then continued the line of questioning and elicited additional testimony from Father and Mother regarding the abortion. Any error in the admission of evidence is harmless if the same or similar evidence is submitted without objection. *Homehealth, Inc. v. N. Indiana Pub. Serv. Co.*, 600 N.E.2d 970, 974 (Ind. Ct. App. 1992). Thus, under these circumstances, Mother has failed to establish prima facie error, and any error in the admission of the abortion testimony was not reversible error.

## Conclusion

[12] Based upon the foregoing, we conclude that any error in the admission of the abortion testimony was harmless. We affirm the trial court's decision awarding joint legal and primary physical custody of Child to Father.

[13] Affirmed.

May, J., and Vaidik, J., concur.